RECEIVED
USDC, WESTERN DISTRICT OF LA.
TONY R. MOORE, CLERK
DATE _____ 3 / 11 / 10
BY _____ DD

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**MONROE DIVISION**

| | |
|---|---|
| **HOLLYBROOK COTTONSEED PROCESSING, LLC** | **CIVIL ACTION NO. 09-0750** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **CARVER, INC., ET AL.** | **MAG. JUDGE MARK L. HORNSBY** |

## RULING

Pending before the Court is a Motion for Summary Judgment [Doc. No. 42] filed by

Defendants Carver, Inc., Lummus Corp., and Carver-Gump (collectively, "Carver") against

Plaintiff Hollybrook Cottonseed Processing, LLC, ("Hollybrook").  For the following reasons,

the Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

In February of 2006, Hollybrook purchased cotton gin equipment from Carver totaling

$381,042.00.  Hollybrook alleges that it relied upon Carver's expertise and recommendations in

selecting and purchasing the equipment necessary to process 150 tons of cottonseed per day.

Hollybrook alleges that, in addition to the equipment, Carver also agreed to provide training and

engineering and technical support.

According to Hollybrook, the equipment it purchased from Carver never operated

properly, and despite many efforts to repair it, the plant's processing volume never rose above 80

tons a day [Doc. No. 47, p.5].  Approximately 15 months after it began operating, the plant

caught fire, and it has since ceased operations [Doc. No. 1-1, ¶ 7].

On February 5, 2009, Hollybrook filed a Complaint [Doc. No. 1-1] against Carver and

two other Defendants in the 5th Judicial District, East Carroll Parish, Louisiana, alleging breach of contract and violations of Louisiana Civil Code provisions in the Redhibition Chapter.  In its Complaint, Hollybrook seeks damages for lost profits, wages and costs during the time the plant was not operational, expenses incurred in converting the building into a cottonseed processing plant, return of the purchase price, and amounts spent repairing and replacing the equipment. On May 7, 2009, the case was removed to this Court.

On October 7, 2009, Carver filed a Motion for Summary Judgment [Doc. No. 42], based on the grounds that the contract between the parties is governed by Georgia law and waives Carver's liability for incidental and consequential damages, so that the sole recovery available to Hollybrook is Carver's repair or replacement of the equipment.[1]  The choice of law and waiver provisions upon which Carver relies are in a document titled "Conditions of Sale" ("COS"). Carver asserts the COS is part of the contract between the parties.  Carver further asserts that, even if the contract is governed by Louisiana law, the Louisiana Products Liability Act ("LPLA"), LA. REV. STAT. §§ 9:2800.51-.60, precludes all of Hollybrook's claims except redhibition.

On October 22, 2009, Hollybrook filed a Memorandum in Opposition [Doc. No. 47] to Carver's Motion for Summary Judgment, asserting evidentiary problems with the motion and arguing that the contract does not include the COS.  Hollybrook alleges that the provisions in the COS were not negotiated and were never presented to Hollybrook by Carver prior to the contract's formation.  Hollybrook also argues that the LPLA does not apply in this case because it applies only to personal injury tort claims.

---

[1] Thus, the motion is actually one for *partial* summary judgment.

2

On November 2, 2009, Carver filed a Reply [Doc. No. 55] to Hollybrook's Opposition, further authenticating the documents attached to its Motion for Summary Judgment and asserting that Louisiana's "mailing presumption" rule applies in this case to defeat Hollybrook's allegation that it did not receive the COS.  Finally, Carver argues that the LPLA applies regardless of the type of injury.

In addition to these memoranda, each party has submitted a supplemental memorandum further briefing the issue of whether the COS is part of the contract [Doc. Nos. 81 and 92].

## II.    LAW AND ANALYSIS

### A.    Summary Judgment Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  The moving party bears the initial burden of informing the Court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact.  *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party.  *Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  *Id.*  "[O]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

3

### B.    Analysis

#### 1.    Disputed and Undisputed Facts

Sometime in 2005, Hollybrook and Carver entered into negotiations regarding

Hollybrook's purchase of cotton gin equipment from Carver.  Carver alleges that on August 15,

2005, Bob Pavlik ("Pavlik"), Carver's Product General Manager at the time, mailed a price quote

titled "Proforma S-2959/05" ("Proforma 1"), including the COS, to Lloyd Dahlem ("Dahlem"),

the Hollybrook employee responsible for equipment procurement and installation for the new

plant  [Doc. No. 42-6].  Hollybrook denies ever receiving this mailing and did not accept the first

price quote.

On December 20, 2005, Arnie Cobb ("Cobb"), Carver's Product Manager, faxed a second

price quote, "Proforma S-2959/05 Rev. 2" ("Proforma 2"), to Dahlem.  [Doc. No. 42-7].  It is

undisputed that the COS was not included with the Proforma 2 fax.

Negotiations concluded on February 28, 2006.  On that date, Pavlik faxed a third signed

price quote, "Proforma S-2959/05 Rev. 3" ("Proforma 3"), to Dahlem.  [Doc. No. 42-8].  It is

undisputed that this fax also did not include the COS.  Pavlik's accompanying fax message states

that Proforma 3 lists "the items you have agreed to purchase from us."  [Doc. No. 42-8, p. 1].

Pavlik also wrote, "I will send you a formal signed copy by overnight mail.  Please send us a

confirmation purchase order addressed to Carver, Inc."  As requested, Dahlem faxed a one-page

signed document to Carver that same day, stating "[p]lease use this letter as a confirmation

purchase order for Proforma No. 2-2959-05 (Rev. 3)."  [Doc. No. 47-5].  In his deposition,

Pavlik stated that after he received the purchase order from Dahlem, he considered the purchase a

"done deal," and he entered the manufacturing order the next day, March 1, 2006.  [Doc. No. 92-

1, Pavlik Dep. pp. 59-61].

Carver alleges that Pavlik mailed Hollybrook the "formal signed copy" of Proforma 3 with the COS  by overnight mail on February 28, 2006.  Carver argues that these two documents make up the final contract between the parties.  Hollybrook admits that it received the mailed copy of Proforma 3, but denies that it included the COS.  Hollybrook claims it never received a copy of the COS until November of 2007, in connection with a later contract between the parties. [Doc. No. 47, p. 7].

There is no reference to the COS in the body of any of the proformas.  None of the correspondence between the parties refers to the COS before August 31, 2007.  The August 15, 2005 letter from Pavlik, allegedly mailed with Proforma 1 and the COS, does not mention the COS, despite describing other enclosures [Doc. No. 92-1, p. 80].  Pavlik's message accompanying the February 28, 2006 fax of Proforma 3 also does not mention the COS.

Pavlik admits he never negotiated or even discussed the COS with anyone from Hollybrook.  [Doc. No. 92-1, Pavlik Dep., pp. 23-24, 40-41, 58].  Further, Cobb and Michael McLaughlin, General Manager for Carver, admit that it is Carver's standard practice not to discuss the COS with customers unless the customers ask questions about it.  [Doc. No. 47-8, Cobb Dep., pp. 48-49, 112-13; Doc. No. 81-1, McLaughlin Dep., pp. 196-97].

### 2.    Whether the COS is Part of the Contract

Louisiana law governs the choice of law analysis in a diversity action.  *DP Concrete Products, LLC v. American Spring Wire Corp.*, No. 08-571, 2010 WL 147977, at *3 (W.D. La. Jan. 13, 2010).  Under Louisiana law, parties may stipulate which state's law governs the contract unless that law contradicts public policy. LA. CIV. CODE art. 3540.

Carver argues that the Court should rely on a choice of law provision in the COS and apply Georgia law to the issue of whether the incidental and consequential damages waiver in the COS is valid. A threshold issue, however, is whether the provisions contained in the COS are part of the contract.

If, applying Louisiana law, the COS is part of the contract, then its choice of law provision requires that Georgia law be applied to this dispute. If the COS is not part of the contract, then its provisions, including the choice of law provision and the provision limiting Carver's liability for damages, do not apply. To resolve the issue of whether the COS is part of the contract, the Court must decide what documents represent the contract between Hollybrook and Carver under Louisiana law.

Hollybrook argues that the COS provisions are not part of the contract because it did not receive them prior to the contract's formation. In response, Carver offers evidence that it mailed the COS to Hollybrook on two separate occasions, and invokes the "mailing presumption" of receipt[2] to support its summary judgment motion. The two parties spend the bulk of their briefs on this issue, disputing the sufficiency of the evidence that Carver offers of mailing and that Hollybrook offers of non-receipt. In essence, they disagree about whether there is a genuine issue of fact regarding Hollybrook's receipt of the COS.

Before determining whether this issue is genuine, however, the Court must determine whether Hollybrook's alleged receipt of the COS is actually material to whether it is part of the contract. Hollybrook's receipt of the COS is only material if receipt at the times Carver alleges

---

[2] In Louisiana, there is a rebuttable presumption of receipt by the addressee when the sending party shows that a letter has been properly addressed, stamped, and mailed. *Ottermann v. Ganus*, 455 So.2d 1385, 1387 (La. 1984).

would make the COS part of the contract.  Therefore, the Court must determine whether

Hollybrook's receipt at either or both times that Carver alleges would have any legal effect on the

contract.

### i.      The Legal Effect of Hollybrook's Alleged Receipt of the COS with Proforma 1

"As a general rule of contract law, separate documents may be incorporated into a

contract by attachment or reference thereto."  *L&A Contracting Co., Inc. v. Ram Indus. Coatings,*

*Inc.*, 99-0354, p. 19 (La. App. 1 Cir. 6/23/00); 762 So.2d 1223, 1234.  If a contract refers to a

separate document, that document may be incorporated even though it is not attached to the

contract, and even if the other party never saw the actual document because the other party is put

on notice of its existence.  *AWC, Inc. v. CSF Constr., Inc.*, 2005-0865, pp. 5-6 (La. App. 4 Cir.

4/26/06); 931 So.2d 382, 386.  However, where a party includes a term in its initial bid that is not

later incorporated into the resulting contract, the term does not become part of the contract.  *L&A*

*Contracting*, 762 So.2d at 1234.

Carver alleges that on August 15, 2005, it mailed Hollybrook a copy of the COS with

Proforma 1.  Negotiations regarding the equipment and price did not conclude, however, until

February 28, 2006, over 6 months later.  During this time, the Carver employees who negotiated

with Hollybrook never explained, discussed, or even mentioned the COS provisions to

Hollybrook.  These provisions also were not mentioned in or included with any of the proformas

or correspondence between the parties during this time.

The Court finds that Hollybrook's receipt of the COS with Proforma 1 is irrelevant to the

issue of whether it is part of the contract.  Receipt of terms and conditions with a prior,

unaccepted price quote during negotiations does not put a party on notice that they are meant to be included in the later contract, and where those terms are not incorporated by reference on the face of the later contract, they are not part of the contract unless they are attached to it.  This is particularly true here, where the terms were allegedly mailed 6 months prior to the contract formation and were never again included, incorporated, or even mentioned in the interim price quotes, correspondence, or negotiations.

> **ii.    The Legal Effect of Hollybrook's Alleged Receipt of the COS with the Mailed Copy of Proforma 3**

Because Proforma 3 does not incorporate the COS by reference, the only way it could have been included in the contract is by attachment.  Assuming Carver attached the COS to the mailed copy of Proforma 3, whether the COS became part of the contract through attachment turns on which documents make up the contract between the parties, i.e., which documents constitute the offer and the acceptance.

"A contract is formed by the consent of the parties established through offer and acceptance." LA. CIV. CODE art. 1927.  Louisiana Civil Code article 2601 states that:

> [a]n expression of acceptance of an offer . . . suffices to form a contract of sale if there is agreement on the thing and the price, even though the acceptance contains terms additional to, or different from, the terms of the offer, unless acceptance is made conditional on the offeror's acceptance of the additional or different terms. . . . Between merchants . . . additional terms become part of the contract unless they alter the offer materially, or the offer expressly limits the acceptance to [its] terms, or the offeree is notified of the offeror's objection to the additional terms within a reasonable time, in all of which cases the additional terms do not become a part of the contract.

Article 2601 closely follows the structure of Uniform Commercial Code ("UCC") section 2-207, which eliminates the "mirror image" requirement for acceptances and contains the "battle

8

of the forms," which determines when additional terms can become part of contracts. Louisiana designed Article 2601 to avoid some of the problems with section 2-207. N. Stephan Kinsella, *Smashing the Broken Mirror: The Battle of the Forms, UCC 2-207, and Louisiana's Improvements*, 53 LA. L. REV. 1555, 1556 (1993). Of particular importance here, UCC section 2-207 applies not only to additional terms in acceptances, but also to additional terms in "written confirmations." Inclusion of confirmations in UCC section 2-207 allows additional terms in confirmations of already-formed oral contracts to retroactively become part of the contract in certain situations. In contrast, article 2601 omits the reference to confirmations, and, assuming its other conditions are met, allows additional terms to become part of a contract *only* if they are included in an actual acceptance. *Id.* at 1573.

An offer must "reflect the intent of the author to give to the other party the right of concluding the contract by assent." *Delta Testing and Inspection, Inc. v. Ernest N. Morial New Orleans Exhibition Hall Authority*, 96-2340, p.1 (La. App. 4 Cir. 8/20/97); 699 So.2d 122, 124. A price quotation alone usually does not have the attributes of an offer. *Leonval v. Flower*, 4 Teiss. 351 (La. App. Orleans 1907). However, "[u]nder Louisiana law, a price list sent *upon request* to a customer constitutes an offer and the contract of sale is completed when the customer accepts the offer by placing an order for goods in accordance with the price list." *Gulf South Mach., Inc. v. Kearney & Trecker Corp.,* 756 F.2d 377, 380 (5th Cir. 1985) (emphasis added).

In this case, there are two documents that could operate as the offer: Carver's fax of Proforma 3 (which did not include the COS), or Hollybrook's purchase order. Pavlik's message accompanying the fax of Proforma 3 to Dahlem indicates that the parties had ended negotiations

9

regarding the equipment Hollybrook would buy from Carver.  ["listing the items *you have agreed*

to purchase from us*," Doc. No. 42-8, p. 1 (emphasis added)].  The message also asks Dahlem to

send a "confirmation" purchase order, and indicates Carver's performance would begin upon its

receipt of the purchase order.  Further, Pavlik indicated in his deposition that he considered the

purchase order an acceptance.  [Doc. No. 92-1, Pavlik Dep. pp. 20, 39, 59-61].  Additionally,

Proforma 3 is very detailed–it describes the specific equipment, the prices, and the engineering

services agreed upon; it also includes a shipment term, a payment term, and a warranty term.

[Doc. No. 42-8].  On the other hand, Hollybrook's purchase order was three sentences long, and

simply states that it confirms Proforma 3.  [Doc. No. 47-5].

   The Court finds that there is no genuine issue as to the fact that the faxed Proforma 3

from Carver was the offer, accepted by Hollybrook's purchase order.  Therefore, even if Carver

included the COS with its later mailed copy of Proforma 3, its additional terms were submitted

after the contract was formed, and so are not part of the contract.  LA. CIV. CODE art. 2601.  If

received, the terms in the COS were merely proposals for modification of the contract.  There is

no evidence the proposed terms were ever accepted by Hollybrook,[3] so they are not part of the

---

[3] On this issue, Carver offers a letter from Cobb to Dahlem dated August 31, 2007, stating
that Carver "normally do[es] not accept consequential damages" per the COS "attached to the
original Carver quote."  [Doc. No. 42-10].  Carver alleges it relied on Hollybrook's failure to
object to this letter.  However, as the letter notes, Carver actually paid Hollybrook's
consequential damages at that time because Hollybrook was a "valued customer."  Hollybrook's
failure to object under those circumstances is no indication that it accepted a modification of the
February 28, 2006 contract.

   Carver also offers evidence of later contracts with Hollybrook containing the COS,
beginning in November 2007 [Doc. Nos. 42-11, 42-12, 42-13, 42-14].  The Court does not reach
this evidence because the terms of later contracts do not influence the terms of the contract at
issue here, and acceptance of the COS with later contracts would not indicate that Hollybrook
accepted a modification to this contract.

contract.[4]

The Court gives notice of its intent to *sua sponte* grant Hollybrook summary judgment on the issue of whether the COS is part of the contract.  If Carver opposes summary judgment in favor of Hollybrook on this issue, it shall file a memorandum in opposition within fourteen (14) calendar days of the date of this Ruling and Judgment.  *See Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 641 (5th Cir. 2007) ("[W]hen the district court gives a party ten[5] days notice[,] a court may grant summary judgment sua sponte on grounds not urged in a pending motion.").  Carver's memorandum shall not exceed ten pages.

### 3.    Whether Hollybrook's Claims are Precluded by the LPLA

Carver argues that, even if Louisiana law does apply to the contract, the LPLA precludes Hollybrook's article 2524, article 2529, and breach of contract claims. [Doc. No. 42, pp. 7-9].  Carver asks the Court to grant it summary judgment on this issue, effectively dismissing these claims and leaving only Hollybrook's redhibition claim.

The LPLA "establishes the exclusive theories of liability for manufacturers for damages caused by their products." LA. REV. STAT. § 9:2800.52.  Damages available under the statute include "damage to the product itself and economic loss arising from a deficiency in or loss of use of the product **only to the extent** that Chapter 9 . . . of the Civil Code entitled 'Redhibition' does not allow recovery for such damage or economic loss."  LA. REV. STAT. art. 9:2800.53(5)

---

[4] Because the Court finds that the COS is not part of the contract, it need not reach the mailbox presumption or resolve the related evidentiary issues raised by Hollybrook in its Opposition to Summary Judgment at this time.  For the same reason, the Court also does not reach Hollybrook's argument that the contract is one of adhesion.

[5] Consistent with the recent amendments to the Federal Rules of Civil Procedure, the Court grants Carver fourteen (14) days to respond.

(emphasis added).[6]

### i. Breach of Contract Claims and the LPLA

Courts have been inconsistent and unclear in determining when and if a buyer can bring a breach of contract claim against a manufacturer. *Compare Avondale Indus., Inc., v. Tyco Valves and Controls, Inc.*, 01-2923, 2003 WL 22697180, at *2-4 (E.D. La. Nov. 10, 2003) (denying summary judgment on both breach of contract and LPLA claims), *and McAuslin v. Grinnell Corp.*, Nos. 97-775, 97-803, 98-2200, 2001 WL 8584, at *2 (E.D. La. Jan. 3, 2001) (finding the LPLA does not preclude recovery for economic loss from breach of contract), *with Jefferson v. Lead Industries Ass'n, Inc.*, 930 F.Supp. 241, 245 (E.D. La. 1996) (holding that claims for breach of implied and express warranties are precluded by the LPLA), *aff'd*, 106 F.3d 1245 (5th Cir.1997), *and Touro Infirmary v. Sizeler Architects*, 2004-2210, 2005-1265, (La. App. 4 Cir. 11/21/06); 947 So.2d 740 (holding that the LPLA precludes recovery under general contract law for breach of express warranty).

While the exclusivity provision of the LPLA leaves no doubt breach of contract claims against manufacturers for damages caused by their products are subsumed by the LPLA, in cases where a specific part of the injury is caused *only* by the breach of contract, and not by the product itself, a buyer might be able to bring both types of claims against a manufacturer. The Court holds that in the limited circumstances where a buyer sues a manufacturer for economic damages not covered in redhibition and not caused by the product itself, it may bring a breach of contract

---

[6] Hollybrook asserts that the LPLA applies only to personal injury tort claims because economic loss is usually not "damage" under the statute. [Doc. No. 47, p.12]. Economic damages are available under the LPLA, however, as Carver correctly points out in its Reply.

claim for those damages, on its own or in addition to a claim for other damages under the LPLA or redhibition.

In this case, Hollybrook alleges economic damages against Carver for breach of its contract to provide equipment capable of processing 150 tons of cottonseed a day.  However, the contract also provided for certain engineering, repair, and training services.  To the extent Hollybrook claims damages caused by the allegedly defective equipment, its breach of contract claims are subsumed by the LPLA, and the Court GRANTS Carver's motion for summary judgment.  However, with regard to any damages that Hollybrook can show were caused by breach of the contract alone, the Court DENIES Carver's motion for summary judgment.

### ii.  Louisiana Civil Code Articles 2524 and 2529 and the LPLA

Louisiana Civil Code article 2520, under the Redhibition Chapter, provides a cause of action for breach of the implied warranty against redhibitory defects.[7]  Articles 2524 and 2529 are also located in the Redhibition Chapter; however, they both state that remedies for breach of the warranties described in them are found under general obligations law.  LA. CIV. CODE arts. 2524, 2529.

Article 2524 states an implied warranty of fitness:

The thing sold must be reasonably fit for its ordinary use.  When the seller has reason to know of the particular use the buyer intends . . . , and that the buyer is relying on the seller's skill or judgment in selecting it, the thing sold must be fit for the buyer's intended use or for his particular purpose.  If the thing is not so fit, the buyer's rights are governed by the general rules of conventional obligations.

---

[7] A redhibitory defect is defined as one that "renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect."  A defect is also redhibitory "when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price."  LA. CIV. CODE art. 2520.

In comment a to article 2524, the drafters clarify that breach of this warranty is a cause of action separate from that of breach of the redhibitory warranty in article 2520.[8]  Comment b to article 2524 explains that when the warranty of fitness is breached, a buyer may seek damages under the general rules of conventional obligations, even where the thing is free of redhibitory defects. Courts have interpreted comment b to indicate that a breach of the warranty of fitness claim is subsumed by the breach of the warranty against redhibitory defects when there is a redhibitory defect in the thing sold. *Stroderd v. Yamaha Motor Corp., USA*, No. 04-3040, 2005 WL 2037419, at *3 (E.D. La. Aug. 4, 2005); *Cunard Line Limited Co. v. Datrex, Inc.*, 05-1171, p.5-6 (La. App. 3 Cir. 4/5/06); 926 So.2d 109, 113-14.   In other words, breach of warranty of fitness applies only in situations where the claim is based on fitness and not the defective nature of the thing.

Article 2529 states that in cases of delivery of a thing which, "though in itself free of redhibitory defects, is not of the kind or quality specified in the contract or represented by the seller, the rights of the buyer are governed by other rules of sale and conventional obligations." Like article 2524, article 2529's comments state that it was introduced "to enhance the distinction between redhibition and contract." LA. CIV. CODE art. 2529 cmt a.  Article 2529's comments further state that it overturns decisions concluding that redhibition is available even where the thing itself was free of defects. LA. CIV. CODE art. 2529, cmt c.

Article 2529 clarifies that claims for breaches of terms or express warranties in contracts

---

[8] "[This article] gives express formulation to the seller's obligation of delivering to the buyer a thing that is reasonably fit for its ordinary use. The Louisiana jurisprudence has recognized the existence of that obligation although, in most instances, it has been confused with the warranty against redhibitory vices." LA. CIV. CODE art. 2524 cmt a.

must be brought under the law of obligations when there is no redhibitory defect in the thing sold. *Avondale Indus., Inc., v. Tyco Valves and Controls, Inc.*, 01-2923, 2003 WL 22697180, at *2-3 (E.D. La. Nov. 10, 2003). If there are redhibitory defects in the thing sold, by its own terms article 2529 does not apply.

The drafters of the Redhibition Chapter made clear they wished to distinguish causes of action based on breach of the warranty against redhibitory defects and causes of action based on breach of implied or express warranties not involving redhibitory defects. Causes of action under articles 2524 and 2529 are available only when redhibition under article 2520 is not, and for claims brought under articles 2524 and 2529, the drafters directed courts to the general law of obligations. Thus, claims brought under articles 2524 and 2529 are breach of contract claims, not redhibition claims.

The LPLA preempts breach of contract claims brought against manufacturers for damages caused by their products. Therefore, the LPLA preempts claims brought under articles 2524 and 2529 against manufacturers for damages caused by their products.[9] *See Stroderd*, 2005 WL 2037419, at *2; *Touro*, 2004-2210, 2005-1265, at 6-7.

In this case, there is an issue of fact as to whether the equipment Hollybrook bought from Carver had redhibitory defects. If it did have redhibitory defects, then Hollybrook's claims under article 2524 and 2529 are subsumed by its claim under article 2520 for breach of the warranty against redhibitory defects. If the equipment was free of redhibitory defects, Hollybrook's claims

---

[9] In *Dawson Farms, LLC v. BASF Corp., et al.*, No. 06-0737, 2008 WL 5220517, at *1 (W.D. La. Dec. 12, 2008), the Court found that "Article 2524's cross reference to another chapter of the civil code does not remove it from the Redhibition Chapter for purposes of construing the LPLA's exclusivity provision." Upon analyzing article 2524 in conjunction with article 2529, the Court recognizes that its analysis in *Dawson Farms* was incorrect.

under article 2524 and 2529 are subsumed by the LPLA to the extent Hollybrook claims damages caused by Carver's products.

To the extent Hollybrook claims damages caused by the allegedly defective equipment, its claims under articles 2524 and 2529 are subsumed either by the warranty against redhibitory defects or by the LPLA, and the Court GRANTS Carver's motion for summary judgment. However, with regard to any damages that Hollybrook can show were caused by breach of article 2524 or 2529 alone, the Court DENIES Carver's motion for summary judgment, pending a determination of whether the purchased equipment had redhibitory defects.

## III.   CONCLUSION

For the foregoing reasons, Carver's Motion for Summary Judgment [Doc. No. 42] is GRANTED IN PART and DENIED IN PART.

Carver's Motion for Summary Judgment on Hollybrook's claim of incidental and consequential damages is DENIED.

Carver's Motion for Summary Judgment on Hollybrook's claim for breach of contract is GRANTED to the extent that Hollybrook claims damages caused by the product itself, and DENIED as to any damages Hollybrook can show were caused solely by breach of contract.

Carver's Motion for Summary Judgment on Hollybrook's claims under Louisiana Civil Code articles 2524 and 2529 is GRANTED to the extent Hollybrook claims damages caused by the product itself, and DENIED as to any damages Hollybrook can show were caused solely by breach of article 2524 or 2529, pending a determination of whether the purchased equipment had redhibitory defects.

The Court gives notice of its intent to *sua sponte* grant summary judgment in favor of

16

Hollybrook on the issue of whether the COS is part of the contract.  The Court finds it was neither incorporated nor attached to the contract at the time of formation, and if it was delivered as Carver alleges, it was delivered after the contract between the parties was formed.  If Carver opposes summary judgment in favor of Hollybrook on this issue, Carver shall file a memorandum in opposition within fourteen (14) calendar days of the date of this Ruling and Judgment.  Carver's memorandum shall not exceed 10 pages.

MONROE, LOUISIANA, this _11_ day of March, 2010.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

17