UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| HOLLYBROOK COTTONSEED PROCESSING, LLC | CIVIL ACTION NO. 09-0750 |
| VERSUS | JUDGE ROBERT G. JAMES |
| CARVER, INC., ET AL. | MAG. JUDGE MARK L. HORNSBY |

RULING

Pending before the Court is a Motion for Partial Summary Judgment and Motion for Declaratory Judgment [Doc. No. 45] filed by Defendant Andritz, Inc. ("Andritz") against Plaintiff Hollybrook Cottonseed Processing, LLC ("Hollybrook").  For the following reasons, Andritz's Motion for Partial Summary Judgment and Motion for Declaratory Judgment is GRANTED IN PART and DENIED IN PART.

I.      FACTUAL AND PROCEDURAL BACKGROUND

In July of 2006, Hollybrook purchased cotton gin equipment from Andritz totaling $197,395.00.  Hollybrook alleges that the equipment it purchased from Andritz did not operate correctly.  In particular, Hollybrook alleges Andritz delivered the incorrect pellet mill model and failed to timely identify and rectify this problem.

On February 5, 2009, Hollybrook filed a Complaint [Doc. No. 1-1] against Andritz and two other Defendants in the 5th Judicial District, East Carroll Parish, Louisiana, alleging breach of contract and violations of Louisiana Civil Code articles 2524 and 2529, and Louisiana Civil Code articles related to redhibition.  In its Complaint, Hollybrook seeks damages for lost profits, expenses related to wages and repair costs during the time the plant was not operational or not

meeting capacity, expenses it incurred in converting the building for the plant, and return of the purchase price and amounts spent on repairing and replacing the equipment.  On May 7, 2009, the case was removed to this Court.

On October 13, 2009, Andritz filed a Motion for Partial Summary Judgment and Motion for Declaratory Judgment [Doc. No. 45].  Andritz asks the Court to grant summary judgment on Hollybrook's claims for violations of Louisiana law and for lost profits, expenses related to wages during the time the plant was not operational or not meeting capacity, and expenses incurred in converting the building into a processing plant.  Andritz also asks the Court to declare that Andritz's aggregate liability for any claim in connection with the contract or equipment is limited to the price of the pellet mill or the pellet mill and its associated equipment.  Andritz bases its argument for summary judgment on the grounds that there is an enforceable contract between the parties that is governed by Pennsylvania law; waives Andritz's liability for special, incidental, and consequential damages; and limits damages under the contract to the price of the product which gave rise to the claim.

On October 22, 2009, Hollybrook filed a Memorandum in Opposition [Doc. No. 49] to Andritz's Motion for Partial Summary Judgment and Declaratory Judgment.  Hollybrook argues that its consent to the contract is vitiated by an error in the model number of the pellet mill it intended to purchase from Andritz.  In the alternative, Hollybrook argues that the terms of the contract are ambiguous and should be construed against Andritz and/or that the terms should not be enforced because the contract is one of adhesion.

On November 6, 2009, Andritz filed a Reply [Doc. No. 61] to Hollybrook's Opposition, arguing that there is no ambiguity in the contract and no genuine issue of material fact regarding

Hollybrook's consent to its terms.  On November 19, 2009, Hollybrook filed a Supplemental

Memorandum in Opposition [Doc. No. 68], pointing out a typographical error in the contract that

it argues makes the contract ambiguous.  On February 25, 2010, Hollybrook filed a Second

Supplemental Memorandum in Opposition [Doc. No. 116].

## II.     LAW AND ANALYSIS

### A.     Summary Judgment Analysis

Summary judgment "should be rendered if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact and

that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  The moving

party bears the initial burden of informing the Court of the basis for its motion by identifying

portions of the record which highlight the absence of genuine issues of material fact.  *Washburn*

*v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007).  A dispute about a material fact is "genuine" if the

evidence is such that a reasonable fact finder could render a verdict for the nonmoving party.

*Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if proof of its

existence or nonexistence would affect the outcome of the lawsuit under applicable law in the

case.  *Id.*  "[O]nly disputes over facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment.  Factual disputes that are

irrelevant or unnecessary will not be counted."  *Id.*

### 1.     Disputed and Undisputed Facts

Hollybrook alleges that, prior to entering into the contract with Andritz, it sent some of its

delinted cottonseed to be tested at Andritz's facility in Pennsylvania.  Hollybrook alleges that

based upon the testing, Andritz engineers specified the 21W-250 pellet mill model for

Hollybrook's operations.  According to Hollybrook, this pellet mill was specified for production

of pellets and cubes of cottonseed meal.

On July 13, 2006, Andritz faxed Hollybrook a proposed agreement to provide Hollybrook

"certain conditioning, pelleting, and cooling equipment."  The proposal expressly incorporated

Andritz's "Standard Terms and Conditions of Sale," which were also attached at the end of the

proposal.  Hollybrook alleges that Andritz mistakenly listed the 21-250 model pellet mill in the

proposal instead of the 21W-250 model.  Without noticing the alleged error, Hollybrook signed

the proposal and returned it to Andritz.  [Doc. No. 45-5].  Andritz subsequently delivered the 21-

250 pellet mill to Hollybrook in March of 2007.  Hollybrook alleges that, from the beginning, the

pellet mill would not produce pellets or cubes.

Hollybrook notified Andritz of its problems with the pellet mill.  Andritz sent technicians

to the plant to try to fix the pellet mill, but the problems continued.  Hollybrook alleges that,

several months after delivery, Tim Duncan of Andritz realized that Hollybrook should have

received the 21W-250 pellet mill model, and told Robert Amacker ("Amacker"), manager of

Hollybrook, in a telephone conversation that Andritz had delivered the wrong pellet mill model

to Hollybrook.  [Doc. No. 49-3].  After that conversation, in December of 2007, Andritz

performed retrofit work on the 21-250 pellet mill pursuant to the contract's warranty.

Hollybrook alleges that, although it was able to produce pellets with the pellet mill after the

retrofit, it was never able to produce satisfactory cubes.  [Doc. No. 49, p. 4].

Andritz denies that it specified the 21W-250 pellet mill to Hollybrook.  [Doc. No. 62, ¶

1].  Andritz also denies that Tim Duncan admitted Andritz delivered the wrong pellet mill model

to Hollybrook.  Andritz admits, however, that Tim Duncan had a telephone conversation with

Amacker sometime after the delivery of the equipment, and that this conversation led to Andritz performing retrofit work on the pellet mill. [Doc. No. 62, ¶ 3].

### 2. Whether the Contract is Enforceable

Louisiana law governs the choice of law analysis in a diversity action. *See DP Concrete Products, LLC v. American Spring Wire Corp.*, No. 08-571, 2010 WL 147977, at *3 (W.D. La. Jan. 13, 2010). Under Louisiana law, parties may stipulate which state's law governs the contract unless that law contradicts public policy. LA. CIV. CODE art. 3540. However, "'preliminary' issues that pertain to the existence of the choice of law clause, such as consent and vices of consent, . . . should be judged according to the law applicable under Article 3537." LA. CIV. CODE art. 3540, cmt. d. Article 3537 states that "an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue." LA. CIV. CODE art. 3537.

Andritz argues that, because of the choice of law provision in the contract, the Court should apply Pennsylvania law to dismiss Hollybrook's claims under Louisiana law and enforce the contract provisions that limit Andritz's liability. However, Hollybrook argues that the error in the pellet mill model voids the contract, including the choice of law provision. [Doc. No. 49, pp. 4-7]. Hollybrook also argues that the contract is not enforceable because it was never signed by Andritz. [Doc. No. 116-17, p. 5-6].

Hollybrook raises issues of consent necessary to the existence of the contract and the choice of law provision. These issues are decided according to the law of the state whose policies would be most seriously impaired if its law were not applied. LA. CIV. CODE arts. 3537, 3540. Because the purpose of the contract was to purchase equipment meant to operate in

Louisiana, it is the state most directly affected by the contract. The Court finds that Louisiana law applies to the issues of consent raised by Hollybrook.

> **i.      Whether Andritz's Failure to Sign the Contract Renders It Unenforceable**

"A contract is formed by the consent of the parties established through offer and acceptance." LA. CIV. CODE art. 1927. An offer must "reflect the intent of the author to give to the other party the right of concluding the contract by assent." *Delta Testing and Inspection, Inc. v. Ernest N. Morial New Orleans Exhibition Hall Authority*, 96-2340, p. 1 (La. App. 4 Cir. 8/20/97); 699 So.2d 122, 124. An offer may be accepted by performance, and a contract formed, where "it is contemplated that the performance will be completed if commenced" and the offeror invites acceptance by performance. LA. CIV. CODE art. 1939. A party may accept an offer and become bound by a contract through performance under a written agreement, even without signing it. *Salim v. Louisiana State Bd. of Ed.*, 289 So.2d 554, 557-58 (La. App. 3 Cir. 1974).

Hollybrook argues that the contract is unenforceable because Andritz never signed or accepted it. Andritz argues that its proposal was an offer, accepted by Hollybrook when Hollybrook signed and faxed it back, thus completing the contract. Andritz's proposal, however, states that all "purchase offers" are subject to acceptance at its headquarters. [Doc. No. 45-5, p. 8]. This provision makes the proposal incapable of acceptance by Hollybrook's assent, and thus incapable of being the offer. Instead, Hollybrook's purchase order—the signed proposal faxed to Andritz—was the offer. By signing and returning the proposal, Hollybrook offered to enter into a contract according to its terms.

Although Andritz never expressly indicated its acceptance of Hollybrook's offer by

6

signing the purchase order, Andritz indicated its consent, accepted the terms in the purchase order, and became bound by those terms when it began performance.  *See Loyd Mercantile Co. v. Long*, 49 So. 521, 522 (La. 1909) (buyer could not revoke his purchase order where manufacturer had commenced construction); *Cyrus W. Scott Mfg. Co. v. Stoma*, 121 So. 335, 336 (La. App. 2 Cir. 1929) (purchase order subject to seller's approval became binding on seller's shipment of goods).  Andritz's failure to sign the contract does not render it unenforceable against either Andritz or Hollybrook.

### ii.       Whether Error Vitiates the Contract

Error vitiates consent to a contract "only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party."  LA. CIV. CODE art. 1949.  "Error may concern a cause when it bears on . . . the thing that is the contractual object or a substantial quality of that thing . . . ."  LA. CIV. CODE art. 1950.  Where the error is mutual, a contract may be rescinded or reformed to reflect the true intent of the parties.  LA. CIV. CODE art. 1949, cmt d.  Where the error is unilateral, relief is usually refused unless the other party "knew or should have known that the matter affected by the error was the reason that prompted the party in error to enter the contract."  *Id.*  However, if the other party is willing to perform the contract as intended, a party may not avail himself of his error.  LA. CIV. CODE art. 1951.

Hollybrook alleges that Andritz made an error in listing the model number of the pellet mill in the proposal.  Hollybrook alleges that, as a result of this error, Andritz caused Hollybrook to erroneously agree to purchase a model different from the one it intended to purchase.  Hollybrook argues that this error vitiates its consent to the contract.  Thus, Hollybrook alleges

mutual error.

Even if there was error in the contract, however, the evidence indicates that Andritz not only was willing to perform the contract as originally intended, but in fact eventually did so. Upon discovery of the alleged error in December of 2007, Andritz retrofitted the pellet mill. [Doc. No. 49, p. 3]. The evidence submitted by Hollybrook indicates that the retrofit was intended to upgrade the pellet mill from a 21-250 to a 21W-250. [Doc. No. 116-2, Timothy Duncan Dep., p. 122; Doc. No. 116-15, Jonathan Thomas Dep., pp. 97-98; Doc. No. 116-13, 10/11/07 email from Gary Krick, 10/24/07 email from Tim Duncan].

Further, Hollybrook accepted the upgrade of the 21-250 pellet mill as part of the performance to which it was entitled under the contract. After affirming the contract to receive its warranty benefits, Hollybrook cannot now take advantage of its error to denounce the contract's liability limitations.[1] Although Hollybrook argues the error was not timely discovered and alleges the equipment still did not work properly after the retrofit, this is evidence of defective equipment and breach of warranty, not an error that invalidates the contract. Because Andritz was willing to perform the contract as intended and because Hollybrook accepted this performance, the contract is enforceable, despite the alleged error.

### 3. Whether the Terms and Conditions Attached to the Contract are Enforceable

Hollybrook objects to enforcement of the provisions incorporated in and attached to the contract as Andritz's "Standard Terms and Conditions of Sale," particularly the choice of law and limitation of liability provisions. Hollybrook argues that these provisions should not be

---

[1] Moreover, in its Complaint, Hollybrook claims damages for breach of contract, which presupposes the existence of the contract.

enforced because they were not negotiated and are adhesionary and ambiguous.  These issues

require interpretation of the contract and thus are governed by Pennsylvania law.[2]  *See* LA. CIV.

CODE art. 3540.

### i.  Whether the Terms and Conditions Attached to the Contract are Adhesionary

Under Pennsylvania law, an adhesion contract is defined as "a standard form contract

prepared by one party, to be signed by the party in a weaker position . . . who has little choice

about the terms."  *Bayne v. Smith*, 265 A.2d 265, 267 (Pa. Super. 2009) (internal quotations

omitted).  The party in the weaker position is usually a consumer.  *Id.*

The provisions to which Hollybrook objects were part of a standard form, but Hollybrook

was not in a weaker position with regard to Andritz.  This transaction took place between

business entities, and they negotiated the contract for at least a month.  [*See* Doc. No. 45-3].

Hollybrook had the opportunity and ability to negotiate changes to the provisions or to refuse to

enter into the contract.  The terms and conditions were attached to the contract, expressly

incorporated on each page of the contract, and stated in clear language.  Further, the terms and

conditions, and in particular the provision limiting Andritz's liability, were specifically brought

---

[2] To the extent Hollybrook argues that the choice of law provision itself is adhesionary and that it did not consent to the provision, the Court finds this argument is without merit.  Under Louisiana law, "[a] contract of adhesion is a standard contract . . . prepared by a party of superior bargaining power for adherence or rejection of the weaker party."  *Aguillard v. Auction Management Corp.*, 2004-2804, p. 9 (La. 6/29/05); 908 So.2d 1, 8-9.  Hollybrook has shown no unequal bargaining power here, merely that it failed to read or object to the terms and conditions, and Andritz did not explain them.  "Signatures on an agreement are not mere ornaments.  A person who signs a written agreement is presumed to know its contents and cannot avoid its obligations by claiming that he did not read it, that he did not understand it, or that it was not explained."  *Greely v. OAG Properties, LLC*, 44,240, p. 8 (La. App. 2 Cir. 5/13/09); 12 So.3d 490, 494; *see also O'Quin v. Verizon Wireless*, 256 F. Supp. 2d 512, 517 (M.D. La. 2003).

to the attention of Hollybrook in the body of the proposal.  [Doc. No. 45-5, p. 8].  This was not a

contract of adhesion.

ii.     **Whether the Contract is Ambiguous about the Applicability of the Attached Terms and Conditions**

Hollybrook claims that the provision in the body of the contract drawing attention to the

attached terms and conditions is ambiguous and should be interpreted against Andritz.  The

provision states:

> We attach a copy of our Standard Terms and Conditions of Sale.  Prior to entering
> into any contract, we will need to reach an agreement on all terms and conditions.
> We draw your attention to the limitations of liability and exclusion for
> consequential damages . . . .  Agreement of our during [sic] business and this
> proposal is made on the assumption that you will so agree.

[Doc. No. 45-5, p. 8].  Hollybrook argues that this provision is ambiguous because it indicates

that additional negotiation will take place and because the typographical error in the last sentence

of the provision makes it unintelligible.

A contract term is ambiguous "if it is reasonably susceptible of different constructions

and capable of being understood in more than one sense."  *Trizechahn Gateway LLC v. Titus*,

976 A.2d 474, 483 (Pa. 2009) (citing *Ins. Adjustment Bureau v. Allstate*, 905 A.2d 462, 468-69

(Pa. 2006)).  However, courts will not "distort the meaning of the language or resort to a strained

contrivance in order to find an ambiguity."  *Id.* (citing *Madison Constr. Co. v. Harleysville Mut.*

*Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999)).  When ambiguity is found, courts may construe the

terms against the drafter and consider extrinsic evidence.  *Rekun v. Pelaez*, 976 A.2d 578, 581

(Pa. Super. 2009).

Hollybrook argues the provision drawing attention to the attached terms and conditions is

ambiguous because it states that the parties need to reach agreement on all terms and conditions "prior to entering into any contract."  Hollybrook argues that this can be understood to mean that the terms and conditions would be agreed on separately, after the parties entered into the contract, and that there is no evidence they ever reached agreement on them.  However, Hollybrook indicated its agreement when it signed the proposal, with the attached terms and conditions, and faxed the whole document to Andritz, without objecting to any of the attached terms and conditions.  In doing so, Hollybrook made an offer to enter into a contract with Andritz on the terms contained in the body of the proposal as well as the attached terms and conditions. Because Andritz accepted this offer, the contract was formed on these terms.

Additionally, the last sentence of the allegedly ambiguous contract provision warns that if Andritz accepts, it does so on the assumption that Hollybrook agrees to the terms and conditions. Although this sentence contains a minor typographical error ("during" should be "doing"), its meaning is reasonably clear.  In fact, the *only* reasonable interpretation of the sentence is found upon correcting this obvious error.  This sentence tells Hollybrook that it should continue the negotiation process if it does not agree to the attached terms and conditions.  Even if this sentence were disregarded, the first paragraph of the attached terms and conditions, entitled "Terms Applicable," also puts Hollybrook on notice that the terms and conditions apply if it does not object.  [Doc. No. 45-5, p. 10, ¶ 1].  Rather than discussing the terms and conditions with Andritz, however, Hollybrook signed and faxed the proposal to Andritz, including the terms and conditions without revision, modification, or question.

The contract provision Hollybrook asserts is ambiguous is reasonably susceptible to only one interpretation.  Its use of future tense does not alter the fact that the provision specifically

draws Hollybrook's attention to the attached terms and conditions and warns that they will apply

unless Hollybrook objects.  It goes against common sense to interpret this provision as an

invitation to negotiate the contract's terms and conditions separately after the contract is formed.

The Court finds that this provision does not render the applicability of the terms and conditions

ambiguous.

### iii.      Whether the Exclusion of Consequential Damages is Enforceable Under Pennsylvania Law

The contract between Hollybrook and Andritz states that "[i]n no event shall Seller . . . be

liable to Buyer . . . for special, incidental or consequential damages of any nature."  [Doc. No.

45-5, p. 10, ¶ 4].  In addition to these exclusions, the contract states that the only remedy

available to Hollybrook for defects in Andritz's products is repair or replacement of the product.

[Doc. No. 45-5, p. 10, ¶ 3].

The contractual limitation of remedies is addressed in Pennsylvania Consolidated Statutes

Title 13, section 2719, which provides:

> **(a) General rule** . . . :
>
> > (1) The agreement may . . . limit or alter the measure of damages recoverable under this division, as by limiting the remedies of the buyer to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts.
> >
> > (2) Resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.
>
> **(b) Exclusive remedy failing in purpose.**--Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this title.
>
> **(c) Limitation of consequential damages.**--Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable.

Thus, generally, parties can limit or exclude remedies by contractual agreement.  However, if circumstances cause a limited or exclusive remedy to "fail of its essential purpose," a party may seek the usual remedies provided by contract law.  13 PA. CONS. STAT. § 2719(b).  Whether a limited or exclusive remedy fails of its essential purpose under the circumstances is an issue of fact for the jury.  *Woolums v. National RV*, 530 F. Supp. 2d 691, 701 (M.D. Pa. 2008).

Additionally, section 2719(c) allows contractual limitations or exclusions of consequential damages unless it is unconscionable.  "[A] contract or term is unconscionable . . . where there was a lack of meaningful choice in the acceptance of the challenged provision and the provision unreasonably favors the party asserting it."  *Salley v. Option One Mortg. Corp.*, 925 A.2d 115, 119-20 (Pa. 2007).  Unconscionability is a question of law, and the party challenging the agreement or term has the burden of proof.  *Id.* at 119-20, 124.

Courts applying Pennsylvania law disagree about whether subsection 2719(b) (voiding limited or exclusive remedy provisions where they fail of their essential purpose) and subsection 2719(c) (allowing limitation or exclusion of consequential damages unless the provision is unconscionable) are interdependent or operate independently.  *Compare, e.g., Robinson v. Freightliner LLC*, No. 08-cv-761, 2010 WL 887373, at *1-2 (M.D. Pa. Mar. 10, 2010) (finding that the two subsections are interdependent), *and Caudill Seed and Warehouse Co., Inc. v. Prophet 21, Inc.*, 123 F. Supp. 2d 826, 829-33 (E.D. Pa. 2000) (finding that the two subsections are interdependent), *with Piper Jaffray & Co. v. SunGard Systems Intern, Inc.*, No. 04-2922, 2004 WL 2222322, at *4-7 (D. Minn. Sept. 30, 2004) (applying Pennsylvania law, finding that the subsections operate independently), *and Northeastern Power Co. v. Balcke-Durr, Inc.*, No.

13

97-CV-4836, 1999 WL 674332, at *17 (E.D. Pa. Aug. 23, 1999) (finding that the subsections operate independently). If subsection (b) modifies subsection (c), then consequential damages are available despite a contract provision excluding them when that provision is unconscionable *or* when an exclusive or limited remedy provision in the contract fails of its essential purpose. If the subsections operate independently, a contract provision excluding consequential damages will be enforced unless it is unconscionable.

Neither the Supreme Court of Pennsylvania nor the Superior Court of Pennsylvania has addressed this issue. Therefore, the Court must predict how the Supreme Court of Pennsylvania would decide this issue. *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 378 (3d Cir.1990). Applying basic principles of statutory construction, the Court predicts that the two subsections would be read independently by the Supreme Court of Pennsylvania. Pennsylvania adheres to the general principles of statutory construction that courts must construe every statute to give effect to all of its provisions, if possible, and when two statutory provisions cannot both be given effect, the specific controls the general. 1 PA. CONS. STAT. §§ 1921(a), 1933. If subsection 2719(b) is construed to operate interdependently with subsection 2719(c), contract provisions excluding consequential damages may be deleted without regard to their unconscionability, robbing subsection 2719(c) of its effect. Further, subsections 2719(a) and (b) apply generally to all remedy limitations, but subsection 2719(c) applies only to limitations of a specific remedy—the remedy of consequential damages. Finally, Pennsylvania law provides that *any* unconscionable contract clause is unenforceable, so subsection 2719(c) is superfluous unless it is meant to clarify that 2719(b) does not apply to contractual provisions that exclude consequential damages. *See* 13 PA. CONS. STAT. § 2302(a).

In this case, two business entities contractually allocated the indeterminate risk that

consequential damages present in the purchase of complicated machinery for a large processing

operation.[3]  Pennsylvania law specifically preserves the parties' allocation of that risk, regardless

whether limitations or exclusions of other types of remedies are voided by failure of an exclusive

remedy provision.  The Court finds that the Supreme Court of Pennsylvania would read §

2719(b) and (c) independently in this case.  Accordingly, the parties' exclusion of consequential

damages in this contract is enforceable unless it is unconscionable.[4]

Hollybrook has offered no evidence that it lacked a meaningful choice when it signed

Andritz's proposal.  In addition, the provision excluding consequential damages does not

eliminate Hollybrook's remedies—it merely limits the scope.  In commercial situations where

limitation of remedies is reasonable, this type of exclusion does not unreasonably favor sellers.

*See Hornberger v. General Motors Corp.*, 929 F. Supp. 884, 891-92 (E.D. Pa. 1996).  The

exclusion of consequential damages in this contract is not unconscionable.

Andritz asks the Court for partial summary judgment on Hollybrook's claims for lost

---

[3] Under these circumstances, the Court finds the reasoning by courts favoring independent operation of subsections 2719(b) and (c) even more persuasive.  *Compare Piper Jaffray & Co.*, 2004 WL 2222322, at *4-7 (stating that courts should respect the liberty of business entities to allocate indeterminate risks, particularly when "a knowledgeable buyer is using an expensive machine or consuming a commodity in a business setting . . . ."), *with Robinson*, 2010 WL 887373, at *2 (stating that the argument that the two provisions are interdependent was "especially compelling in circumstances like [those], where an unsophisticated party enters into what could easily be construed as an adhesion contract with a sophisticated merchant.").

[4] Failure of an exclusive remedy may be relevant to the unconscionability of an exclusion of consequential damages.  In this case, however, failure of the exclusive remedy provision would not render the exclusion of consequential damages unconscionable because Hollybrook still has adequate remedies—it may request general damages up to the amount of the purchase price of the equipment.  *See Northeastern Power Co.*, 1999 WL 674332, at *18.

profits, expenses related to wages during the time the plant was not operational or not meeting

capacity, and expenses incurred in converting the building into a processing plant.  The lost

profits, expenses related to wages, and expenses incurred in converting the building into a

processing plant are excluded consequential damages.  *See* 13 PA. CONS. STAT. § 2715(b).[5]

Accordingly, the Court GRANTS Andritz's Motion for Partial Summary Judgment on

Hollybrook's claims for lost profits, expenses related to wages during the time the plant was not

operational or not meeting capacity, and expenses incurred in converting the building into a

processing plant.

### 4.      Hollybrook's Article 2524, 2529, and Redhibition Claims

In addition to its breach of contract claims, Hollybrook seeks damages under Louisiana

Civil Code articles 2524 and 2529 and Louisiana Civil Code articles related to redhibition.  [Doc.

No. 1-1, ¶ 10].  Andritz argues that if the Court enforces the choice of law provision in the

contract, Hollybrook cannot raise claims that are only available under Louisiana law.

Articles 2524 and 2529 state causes of action based on implied and express warranties in

contracts of sale.  LA. CIV. CODE art. 2524 and 2529.  Article 2520 states the implied warranty

against redhibitory defects, which also arises out of contracts of sale.  LA. CIV. CODE art. 2520;

*see also Datamatic, Inc. v. Int'l Bus. Mach. Corp.*, 795 F.2d 458, 461-62 (5th Cir. 1986);

*Scruggs v. Minton Equip. Co., Inc.*, 98-987, p. 3 (La. App. 3 Cir. 12/9/98); 722 So.2d 130, 132.

Louisiana law permits waiver of these warranties in contracts between commercially

---

[5] "Consequential damages resulting from the breach of the seller include: (1) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know . . . ."  13 PA. CONS. STAT. § 2715(b).  The lost profits, wages, and building conversion expenses are losses resulting from the particular circumstances of Hollybrook.

sophisticated parties if the waiver is clear and unambiguous and the party has notice of them.

LA. CIV. CODE art. 2548; *see also Orthopedic & Sports Injury Clinic v. Wang Laboratories, Inc.*,

922 F.2d 220, 226-27 (5th Cir. 1991); *Datamatic, Inc.*, 795 F.2d at 462-65.

In this case, the choice of law provision states that the contract is governed by

Pennsylvania law.  In addition, the contract contains a clear and unambiguous warranty

provision: "THE EXPRESS WARRANTIES SELLER MAKES IN THIS PARAGRAPH 3 ARE

THE ONLY WARRANTIES IT WILL MAKE.  THERE ARE NO OTHER WARRANTIES . . .

.  IN PARTICULAR, THERE ARE NO IMPLIED WARRANTIES OF MERCHANTABILITY

OR FITNESS FOR A PARTICULAR PURPOSE."  [Doc. No. 45-5, p. 10, ¶ 3(c)].  Thus,

Hollybrook's article 2524, article 2529, and redhibition claims are either precluded by the

contract's choice of law provision, or Hollybrook waived these claims by agreeing to the limited

warranty contained in the terms and conditions of the contract.  *See Orthopedic & Sports Injury*

*Clinic*, 922 F.2d at 226-27.  Accordingly, the Court GRANTS Andritz's Motion for Partial

Summary Judgment on Hollybrook's article 2524, article 2529, and redhibition claims.

### B.      Declaratory Judgment Analysis

Andritz also moves the Court for a declaratory judgment under 28 U.S.C. § 2201(a) that

its liability is limited to an amount between $104,872.00 and $132,617.00.  [Doc. No. 45-1, p.

12].

The Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, allows a federal court to issue

declaratory relief "[i]n a case of actual controversy within its jurisdiction."   The Supreme Court

has indicated that this act "confer[s] on federal courts unique and substantial discretion in

deciding whether to declare the rights of litigants."  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286

(1995).  Declaratory relief is appropriate under the act when a substantial controversy of

sufficient immediacy and reality exists between parties having adverse legal interests.  *Maryland*

*Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

        As noted above, the contract between Hollybrook and Andritz contains a limitation of

liability provision.  In addition to waiving liability for special, incidental, and consequential

damages, the contract also provides that "the aggregate liability of [Andritz] . . . for any claim of

any kind for any loss or damage . . . connected with this Agreement or . . . any product . . . shall

in no event exceed the price allocable to Product which gave rise to the claim."  [Doc. No. 45-5,

p. 10, ¶ 4].  This language unambiguously caps Andritz's liability for damages arising from

breach of the contract at the contract price of the equipment.  What equipment gave rise to

Hollybrook's claims, however, is an issue of fact.

        The contract price for all of the equipment that Hollybrook bought from Andritz is

$197,395.00.  Andritz categorizes the equipment into three groups: the pellet mill and associated

equipment, the conditioner and associated equipment, and the cooler.  Andritz argues that

Hollybrook only complains about the performance of the pellet mill, so the amount Hollybrook

can recover should be limited to between $104,872.00 (the price of the pellet mill) and

$132,617.00 (the price of the pellet mil and associated equipment).

        In support of its motion, Andritz offers Amacker's deposition testimony, which Andritz

argues "unequivocally establishes" that Hollybrook's only complaint is with the pellet mill.

[Doc. No. 45-1, p. 12].  When asked in his deposition whether Hollybrook ever experienced

problems with the operation of Andritz's cooler, Amacker responded "I don't know.  I don't

remember any, to be honest about it."  [Doc. No. 45-7, Amacker Dep., p. 42].  When asked

whether Hollybrook ever experienced problems with the operation of Andritz's conditioner,

Amacker responded "No.  I don't know."  [Doc. No. 45-7, Amacker Dep., p. 42].

The Court does not consider this to be "unequivocal" testimony, but also recognizes that

Hollybrook has failed to address this portion of Andritz's motion.  Nonetheless, the Court finds

that Andritz has not supported its singling out of the pellet mill as the sole product which gave

rise to Hollybrook's claims.  The alleged failure of Andritz's products to produce pellets and/or

cubes gave rise to Hollybrook's alleged damages, and it appears from the evidence that the mill,

conditioner, and cooler may be an integrated system for production of pellets and cubes.  Andritz

has not made it clear to the Court how or if this equipment worked together.

This is not a traditional declaratory judgment action under 28 U.S.C. § 2201 asking the

Court to decide a potentially non-justiciable controversy to avoid future litigation.  *See, e.g.,*

*Rowan Comp., Inc. v. Griffin*, 876 F.2d 26 (5th Cir. 1989).  In this case, there is clearly a live

controversy because the facts are fully developed, and Hollybrook has filed suit.  However,

Hollybrook has not yet had the opportunity to develop its case for damages, and Andritz has not

demonstrated to the Court that Hollybrook cannot establish damages beyond the range Andritz

requests.[6]  Further, both parties have requested a jury trial, and the amount of damages appears to

be a question of fact that should be determined by the jury.  Therefore, the Court DENIES

Andritz's Motion for Declaratory Judgment.

## III.    CONCLUSION

For the foregoing reasons, Andritz's Motion for Partial Summary Judgment and Motion

---

[6] If Andritz can establish that the conditioner and cooler perform useful functions independent from the pellet mill, the Court gives it leave to re-file its motion for declaratory judgment on this issue.

for Declaratory Judgment [Doc. No. 45] is GRANTED IN PART and DENIED IN PART.

Andritz's Motion for Partial Summary Judgment is GRANTED, and Hollybrook may not recover

from Andritz damages for lost profits, for expenses related to wages during the time the plant was

not operational or not meeting capacity, and for expenses incurred in converting the building into

a processing plant.  Hollybrook's claims brought under Louisiana Civil Code articles 2524, 2529,

and redhibition are DISMISSED WITH PREJUDICE.  Andritz's Motion for Declaratory

Judgment is DENIED.

       MONROE, LOUISIANA, this 1st day of April, 2010.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE