UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| HOLLYBROOK COTTONSEED PROCESSING, LLC | CIVIL ACTION NO. 09-0750 |
| VERSUS | JUDGE ROBERT G. JAMES |
| CARVER, INC., ET AL. | MAG. JUDGE MARK L. HORNSBY |

RULING

Pending before the Court is a second Motion for Summary Judgment [Doc. No. 110] filed by Defendants Carver, Inc., Lummus Corp., and Carver-Gump (collectively, "Carver") against Plaintiff Hollybrook Cottonseed Processing, LLC ("Hollybrook"). For the following reasons, the Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

I.      FACTUAL AND PROCEDURAL BACKGROUND

In February of 2006, Hollybrook purchased cotton gin equipment from Carver totaling $381,042.00. Hollybrook alleges that it relied upon Carver's expertise and recommendations in selecting and purchasing the equipment necessary to process 150 tons of cottonseed per day. In addition to the equipment, Carver also agreed to provide training and engineering and technical support.

According to Hollybrook, the equipment it purchased from Carver never operated properly, and despite many efforts to repair it, the plant never reached its intended processing volume. Approximately 15 months after it began operating, in March of 2008, the plant caught fire, and it has since ceased operations [Doc. No. 1-1, ¶ 7].

On February 5, 2009, Hollybrook filed a Complaint [Doc. No. 1-1] against Carver and

two other Defendants in the 5th Judicial District, East Carroll Parish, Louisiana, alleging breach of contract and violations of Louisiana Civil Code provisions in the Redhibition Chapter.  [Doc. No. 1-1].  In its Complaint, Hollybrook seeks damages for lost profits, wages and repair costs during the time the plant was not operational, expenses incurred in converting the building into a cottonseed processing plant, return of the purchase price, and amounts spent repairing and replacing the equipment.  On May 7, 2009, the case was removed to this Court.

On February 12, 2009, Carver filed its second Motion for Summary Judgment [Doc. No. 110], arguing that 1) Defendant Carver-Gump should be dismissed because it is not a separate legal entity from Carver, Inc.; 2) Hollybrook's claims against Defendant Lummus Corp. ("Lummus") should be dismissed because Lummus is not liable for the acts of its subsidiary, Carver, Inc.; 3) Hollybrook's professional negligence claims should be dismissed for lack of evidence; 4) Hollybrook's redhibition and Louisiana Products Liability Act ("LPLA") claims should be dismissed for lack of evidence; and 5) Hollybrook's redhibition and LPLA claims are time-barred.

On March 7, 2010, Hollybrook filed a Memorandum in Opposition [Doc. No. 120] to Carver's second Motion for Summary Judgment.  Hollybrook argues that Carver has not carried its burden of establishing the respective defendants' legal statuses and that Lummus's status as a parent corporation is irrelevant because Lummus employees as well as Carver, Inc. employees were at fault in causing the damages suffered by Hollybrook.  Hollybrook also argues that the "single business enterprise" doctrine is applicable to Lummus and Carver, Inc.  Additionally, Hollybrook offers evidence that Carver-Gump is a subsidiary of Lummus instead of a division of Carver, Inc.

Regarding its redhibition claims, Hollybrook argues that the equipment it purchased from Carver should be treated as a system for purposes of sufficiency of evidence and prescription. Hollybrook nonetheless offers evidence that it had problems with each component of the system that were still being addressed when their claim allegedly prescribed.

On March 22, 2010, Carver filed a Reply [Doc. No. 130] to Hollybrook's Memorandum in Opposition.  In its Reply, Carver does not address the legal status of the defendants, but reiterates its other arguments for summary judgment.

On April 27, 2010, Hollybrook filed a Supplemental Memorandum in Opposition [Doc. No. 164] to Carver's second Motion for Summary Judgment.  On May 11, 2010, Carver filed a Supplemental Reply Memorandum [Doc. No. 171].

II.      LAW AND ANALYSIS

A.      Summary Judgment Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  The moving party bears the initial burden of informing the Court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact.  *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  *Id.*  "[O]nly disputes over facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial.  *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994).  The nonmoving party must show more than "some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In evaluating the evidence tendered by the parties, the court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor.  *Anderson*, 477 U.S. at 255.

**B.      Analysis**

**1.      Legal Status of Defendant Carver-Gump**

Carver argues that Defendant Carver-Gump should be dismissed because it is not a separate legal entity subject to suit, but only a division of Defendant Carver, Inc.

"A division of a corporation is not a proper defendant capable of being sued."  *Stanley v. Bayer, A.G.*, No. 05-541, 2005 WL 1846962, at *2 (W.D. La. Jul. 28, 2005).  In other words, "[a] division of a corporation is not a separate legal entity but is the corporation itself."  *Western Beef, Inc. v. Compton Inv. Co.***,** 611 F.2d 587, 591 (5th Cir. 1980) (citing *Stotter and Co., Inc. v. Amstar Corp. et al.*, 579 F.2d 13, 18 (3d Cir. 1978)).

As evidence that Carver-Gump is a division of Carver, Inc., Carver offers its statements that it is so in its Answer [Doc. No. 13, ¶ 4] and its Joint Corporate Disclosure Statement [Doc. No. 16].  In response, Hollybrook offers a June 22, 2007 e-mail from Arnie Cobb ("Cobb"), in which he identifies himself as Product General Manager of "Carver-Gump, Subsidiary of

Lummus Corp." [Doc. No. 120-6].  This e-mail does not contradict Carver's assertion that

Carver-Gump is a division of Carver, Inc., as Hollybrook claims.  Because Carver, Inc. is a

subsidiary of Lummus, a division of Carver, Inc. might also refer to itself as a subsidiary of

Lummus, although more accurately it is *part of* a subsidiary of Lummus.  In light of Carver's

sworn assertions to the Court that Carver-Gump is a division of Carver, Inc., Hollybrook has not

offered evidence sufficient to establish a genuine issue of fact as to whether Carver-Gump is

legally separate from Carver, Inc.[1]  Accordingly, the Court GRANTS Carver's Motion for

Summary Judgment on Hollybrook's claims against Defendant Carver-Gump.

### 2.   Liability of Defendant Lummus

Carver also argues that Hollybrook's claims against Lummus should be dismissed

because Lummus is not liable for the acts of its subsidiary, Carver, Inc.

Generally, shareholders are not liable for the debts of the corporation.  *Riggins v. Dixie

Shoring Co., Inc.*, 590 So.2d 1164, 1167 (La. 1991).  This principle extends to parent companies,

which generally are not liable for the acts or debts of their separately-incorporated subsidiaries.

*Andry v. Murphy Oil, U.S.A., Inc.*, 2005-0126, p. 15 (La. App. 4 Cir. 6/14/06); 935 So.2d 239,

249-51.

However, when companies operate as a "single business enterprise," the Court may

disregard the corporate forms separating them to prevent fraud or achieve equity.  *City of

Alexandria v. Cleco Corp.*, No. 1:05-cv-01121, 2010 WL 114397, at *7-8 (W.D. La. 2010).

---

[1] Additionally, the Carver, Inc. website indicates that Gump, acquired by Carver, Inc. in 2000, is a division of Carver, Inc.  *See* http://www.gumponline.com/who.html.  "Carver-Gump" seems to be used as a brand name for products or to identify the once-separate companies as a unified entity.  *See* http://www.carver-inc.com/news_gump_acquire.html.

Louisiana courts employ a non-exhaustive list of eighteen factors to determine whether the "single business enterprise" doctrine applies.  *Id.* (citing *Green v. Champion Ins. Co.*, 577 So.2d 249, 257-58 (La. App. 1st Cir. 1991)).[2]

Additionally, in redhibition claims, there is a presumption of solidary liability between manufacturers and the sellers of a redhibitory product, regardless of their separate legal status. *See* LA. CIV. CODE art. 2545, comment c; *Bearly v. Brunswick Mercury Marine Div.*, 39,069, p. 8 (La. App. 2 Cir. 10/27/04); 888 So.2d 309, 314; *LeGros v. ARC Services, Inc.*, 2003-0918, p. 4-5 (La. App. 3 Cir. 2/25/04); 867 So.2d 63, 66.

Hollybrook argues that the Court should not dismiss its claims against Lummus because 1) there is evidence the "single business enterprise" doctrine may operate in this case, allowing the two companies to be held solidarily liable; and 2) Lummus participated in manufacturing the equipment, making it a solidary obligor under Hollybrook's redhibition claim.[3]

---

[2]  The eighteen factors listed by the *Green* court are: 1) corporations with identity or substantial identity of ownership, that is, ownership of sufficient stock to give actual working control; 2) common directors or officers; 3) unified administrative control of corporations whose business functions are similar or supplementary; 4) directors and officers of one corporation act independently in the interest of that corporation; 5) corporation financing another corporation; 6) inadequate capitalization ("thin incorporation"); 7) corporation causing the incorporation of another affiliated corporation; 8) corporation paying the salaries and other expenses or losses of another corporation; 9) receiving no business other than that given to it by its affiliated corporations; 10) corporation using the property of another corporation as its own; 11) noncompliance with corporate formalities; 12) common employees; 13) services rendered by the employees of one corporation on behalf of another corporation; 14) common offices; 15) centralized accounting; 16) undocumented transfers of funds between corporations; 17) unclear allocation of profits and losses between corporations; and 18) excessive fragmentation of a single enterprise into separate corporations.  577 So.2d at 257-58.

[3] Hollybrook also argues that Lummus is liable under a negligence theory because its employees provided engineering and troubleshooting services.  The Court will address Hollybrook's purported negligence claims separately.

Hollybrook offers evidence that Carver, Inc. and Lummus employees worked very closely throughout the negotiation, sale, manufacture, and troubleshooting phases of the transaction between Carver and Hollybrook. Hollybrook offers depositions from Lummus and Carver, Inc. employees indicating that Lummus employees supervised Carver, Inc. engineers [Doc. No. 120-5, Pavlik Dep. p.13-14], and that employees from both companies answered engineering questions from Hollybrook during initial negotiations [Doc. No. 120-4, Isabell Dep., p. 15, 58-59] and participated in the design and manufacture of equipment [Doc. No. 120-2, McLaughlin Dep., p. 50, 64; Doc. No. 120-7, Cobb Dep., p. 130, 141]. Hollybrook also offers e-mail exchanges between Carver, Inc. and Lummus employees to show they worked as a team to address the problems with the equipment. [Doc. No. 120-8].

The evidence Hollybrook offers implicates some of the factors identified in *Green* for determining whether the "single business enterprise" doctrine applies, particularly those related to common employees, services, and property.[4] 577 So.2d at 257-58. The evidence is also sufficient to raise a genuine issue of material fact as to whether Lummus had a role in manufacturing the equipment, potentially making it a solidary obligor for purposes of Hollybrook's redhibition claims. Therefore, the Court DENIES Carver's Motion for Summary Judgment on Hollybrook's claims against Lummus.

---

[4] Whether the doctrine applies to Carver, Inc. and Lummus is a question of law for the Court to decide. However, it is a fact-specific inquiry, and Plaintiff's Memorandum in Opposition to Summary Judgment indicates that, at the time it was filed, discovery on this issue was still ongoing [Doc. No. 120, p. 5]. It appears that this issue has not been developed fully enough by the parties to permit summary judgment at this time. If the parties have not settled the issue of whether the "single business enterprise" doctrine applies in this case prior to trial, they should file a motion addressing this issue by the deadline for Motions in Limine, December 17, 2010.

### 3.      Hollybrook's Engineering Advice Claims

Carver construes Hollybrook's claims regarding incorrect engineering and troubleshooting advice as a professional negligence claim and argues that the Court should dismiss it because Hollybrook has offered no expert testimony as to the proper standard of care. [Doc. No. 130, pp. 8-9].

Hollybrook raised only breach of contract and redhibition claims in its Complaint.  [Doc. No. 1-1, ¶ 10].  In its Memorandum in Opposition to Summary Judgment, however, Hollybrook contends, for the first time, that Lummus and Carver, Inc. are liable for the negligence of their employees who provided engineering and troubleshooting services.  [Doc. No. 120, p. 9].

Fifth Circuit authority is split as to whether the Court must construe Hollybrook's inclusion of a new negligence theory in its response to a motion for summary judgment as a motion to amend the Complaint.  *Eliott v. Quintana*, 336 Fed. Appx. 405, 406 (5th Cir. 2009) (comparing *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) with *Ganther v. Ingle*, 75 F.3d 207, 211-12 (5th Cir. 1996)).  However, even if the Court allowed the amendment, it would be futile.  Any professional negligence claim would be subject to summary judgment in Carver's favor because Hollybrook has offered no evidence on the appropriate standard of care, which, as Carver correctly argues, would be required in this case to establish a *prima facie* claim of professional negligence.  *Carter v. Deitz*, 556 So.2d 842, 867-69 (La. App. 4 Cir. 1990).

Thus, to the extent that Hollybrook attempts to assert a professional negligence claim for faulty engineering and troubleshooting advice against Carver, Inc. and Lummus, Carver's Motion for Summary Judgment is GRANTED and Hollybrook will not be permitted to pursue such a

claim at trial. Any claim by Hollybrook related to engineering and troubleshooting advice

therefore must be based on breach of contract.

### 4.     Hollybrook's Product Defect Claims

Carver argues that the Court should dismiss Hollybrook's redhibition and LPLA claims

for lack of evidence and because they are time-barred. Hollybrook did not assert an LPLA claim

in its Complaint, and affirmatively denies that the LPLA applies to its case. [Doc. No. 120, p.

10]. Therefore, to the extent it seeks summary judgment on Hollybrook's LPLA claim, Carver's

Motion for Summary Judgment is DENIED AS MOOT. Hollybrook has asserted a redhibition

claim, however, and the Court will address sufficiency of the evidence and prescription with

regard to it.

"A defect is redhibitory when it renders the thing useless, or so inconvenient that it must

be presumed that a buyer would not have bought the thing had he known of the defect." LA. CIV.

CODE art. 2520. "A defect is redhibitory also when, without rendering the thing totally useless, it

diminishes its usefulness or its value so that it must be presumed that a buyer would still have

bought it but for a lesser price." *Id*. This warranty covers only defects that exist at the time of

delivery. LA. CIV. CODE art. 2530. If a defect appears within three days of delivery, it is

presumed to have existed at that time. *Id*. However, even where the defect appears more than

three days after the delivery, a reasonable inference that the defect existed at that time may arise

when the defect appears soon after the thing is put into use and there is no other explanation or

intervening cause shown. *Rey v. Cuccia*, 298 So.2d 840, 843 (La. 1974).

Existence of a redhibitory defect is a question of fact and need not be proved by expert

testimony. *Jones, Walker, Waechter, Poitevent, Carrere & Denegre v. Information System and*

*Supply Co., Inc.*, 477 So.2d 814, 816 (La. App. 5 Cir. 1985). "Where machinery is involved, the required showing is that the device failed to perform properly . . . under conditions of normal use." *Id.* The buyer need not prove the underlying cause of the defect, only that the defect existed. LA. CIV. CODE art. 2530, comment b. The action for redhibition prescribes one year from the day the defect was discovered by the buyer, but prescription is interrupted when the seller accepts the thing for repairs. LA. CIV. CODE art. 2534.

There were three major components of the cotton seed processing equipment that Hollybrook purchased from Carver: two seed cleaners, three delinters and associated equipment, and one lint cleaner (the "Hi-Cel"). The seed cleaners separated the cottonseed from debris, the delinters removed excess lint from the cottonseed, and the Hi-Cel removed impurities and shorter fibers from the cottonseed lint. [Doc. No. 110-1, pp. 2-3]. Carver argues that these components should be considered separately for purposes of Hollybrook's redhibition claim,[5] and that the Court should grant it summary judgment on all or some of that claim either 1) because Hollybrook has not offered sufficient evidence of a defect in each type of equipment, or 2) because Hollybrook has not offered evidence that repairs to each type of equipment continued until February 5, 2008 or later, one year prior to the date it filed this lawsuit.

Hollybrook offers evidence that the seed cleaners were defective in the form of deposition testimony by Douglas Dahlem ("Dahlem"), a former Hollybrook plant manager who participated

---

[5] Hollybrook argues that the equipment should be considered as a whole because it was intended to operate as a unified system to clean and process cottonseed. There is some evidence that this view might be warranted, at least with regard to the delinters and Hi-Cel. [*See* Doc. No. 115, Amacker Dep., pp. 217-18, 290-91, explaining that the Hi-Cel must operate to justify delinting]. However, the Court need not reach this argument because it concludes that Hollybrook has put forth evidence sufficient to overcome summary judgment with regard to each component of the system.

in starting up the gin operations.  Dahlem testifies that the seed cleaners backed up from the very

first time they were used.  [Doc. No. 110-9, Dahlem Dep., pp. 44-45].  In the spring of 2007,

Carver replaced the two seed cleaners with a single prototype seed cleaner, which had some

initial problems but worked much better.  [Doc. No. 110-9, Dahlem Dep., pp. 231; Doc. No. 115,

Amacker Dep., p. 310].  Hollybrook offers evidence, however, that as of February 20, 2008,

Bobby Irons ("Irons"), another former plant manager at Hollybrook, ordered replacement parts

for the prototype seed cleaner because it shook so badly that certain parts fell off and were

damaged.[6]  [Doc. Nos. 120-19 and 164-1].  Carver argues that these were only inexpensive

routine repairs, which do not interrupt prescription.  [Doc. No. 171-2, p.2].  Irons stated in his

deposition, however, that the damage caused by the prototype's shaking would not be considered

ordinary wear and tear, and that eventually the replacement parts were tack welded in place to

prevent them from shaking off again.  [Doc. No. 164-1, Irons Dep., pp. 95-97].

Hollybrook also offers evidence that there were problems right away with the delinters

and their associated equipment.  [Doc. No. 110-9, Dahlem Dep., pp. 247-48].  Ricky Condry,

another plant manager for Hollybrook, stated in his deposition that Hollybrook was unable to

---

[6] Irons' deposition testimony about the prototype seed cleaner shaking was offered with
Hollybrook's Supplemental Memorandum in Opposition.  With its first Memorandum in
Opposition, Hollybrook offered only Irons' affidavit and invoices stating that he ordered
replacement parts for the prototype seed cleaner after February 5, 2008, without explaining why
the parts were necessary.  Carver argues in its Supplemental Reply that the Court should not
consider Irons' testimony about the prototype shaking because it presents arguments regarding
the seed cleaner that Hollybrook could have raised in its first Memorandum in Opposition.
However, Irons was deposed after Hollybrook filed its first Memorandum in Opposition, and his
testimony only elaborates on facts presented in it.  Further, Hollybrook presented Irons'
testimony in response to Carver's argument in its Reply that the replacement parts were the result
of ordinary wear and tear.  The Court finds that it is appropriate to consider Irons' testimony
under these circumstances.

operate the delinters at capacity because the machines overheated and the belts in the drive

mechanism slipped.  [Doc. No. 120-15, Condry Dep., pp. 154].  Further, Hollybrook alleges it

had problems with Carver's Tru-line Gummer ("Gummer"), a piece of equipment that sharpened

the delinters' saws.[7]  Dahlem stated that Hollybrook was constantly ordering parts for the

Gummer in an attempt to keep it operational.  [Doc. No. 110-9, D. Dahlem Dep., pp. 174-75].

Hollybrook offers evidence that Carver employees were conducting tests and modifying and

repairing the delinters and Gummer in an attempt to increase the delinters' capacity through mid-

February, 2008.  [Doc. No. 120-8, 02/15/08 e-mail from Mike Dykes].

Finally, Hollybrook offers evidence that, from the beginning, the Hi-Cel released an

unusually large amount of lint into the air when it operated, and that, shortly after beginning

operation, its structural framework began to crack and fall apart.  [Doc. No. 115, Amacker Dep.,

pp. 199-201, 299-302, 353; Doc. No. 110-9, Dahlem Dep., pp. 236-42 ].  Hollybrook continued

to have problems with the Hi-Cel, eventually leading to Carver's replacement of it in March of

2008, after the plant had shut down.  [Doc. No. 115, Amacker Dep., pp. 389-390].

As Carver points out, some of the testimony of the Hollybrook plant managers is

inconsistent, indicating that one manager may not have been aware of problems with or repairs to

particular pieces of equipment about which other managers testified.  However, drawing all

---

[7] Carver argues that Hollybrook's allegations regarding the Gummer should be
disregarded because the problems with the Gummer were not mentioned in Hollybrook's
Petition, and, therefore, Hollybrook is attempting to assert a new claim.  However, the Court
finds that the Gummer is related closely enough to the delinters to be considered part of them for
purposes of putting Carver on notice that it was covered in the petition.  The Gummer was sold
as "delinting equipment" [Doc. No. 120-9, p. 3-4], and Carver's employee, Michael McLaughlin,
agrees that the Gummer goes "hand in hand" with the delinters [Doc. No. 120-2, p. 176,
McLaughlin Dep., p. 176].

justifiable inferences in favor of Hollybrook and taking its evidence as credible, as the Court

must on a motion for summary judgment, the Court finds that Hollybrook has presented genuine

issues of material fact on the issues of whether Carver's equipment was defective and whether

repairs continued on February 5, 2008, or later.  Accordingly, the Court DENIES Carver's

Motion for Summary Judgment on Hollybrook's redhibition claims.

## III.    CONCLUSION

For the foregoing reasons, Carver's Motion for Summary Judgment is GRANTED IN

PART and DENIED IN PART.  Carver's Motion for Summary Judgment on Hollybrook's claims

against Defendant Carver-Gump is GRANTED.  Carver's Motion for Summary Judgment on

Hollybrook's claims against Defendant Lummus is DENIED.  Carver's Motion for Summary

Judgment on Hollybrook's professional negligence claim is GRANTED.  Carver's Motion for

Summary Judgment on Hollybrook's LPLA claims is DENIED AS MOOT.  Carver's Motion for

Summary Judgment on Hollybrook's redhibition claim is DENIED.

MONROE, LOUISIANA, this 12th day of May, 2010.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE