UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| HOLLYBROOK COTTONSEED PROCESSING, LLC | CIVIL ACTION NO. 09-0750 |
| VERSUS | JUDGE ROBERT G. JAMES |
| CARVER, INC., ET AL. | MAG. JUDGE MARK L. HORNSBY |

RULING

Pending before the Court is a "Motion to Amend/Correct Judgment Granting Partial

Summary Judgment on the Issue of Applicability of the LPLA and the Restriction of Plaintiff's

Claims" ("Motion to Amend") [Doc. No. 127] filed by Plaintiff Hollybrook Cottonseed

Processing, LLC ("Hollybrook").  For the following reasons, the Motion to Amend is DENIED.

I.       BACKGROUND

In February of 2006, Hollybrook purchased cotton gin equipment from Defendant Carver,

Inc.  Hollybrook alleges that it relied upon Carver, Inc.'s expertise and recommendations in

selecting and purchasing the equipment necessary to process 150 tons of cottonseed per day.  In

addition to the equipment, Carver, Inc., also agreed to provide training and engineering and

technical support.

According to Hollybrook, the equipment it purchased from Carver, Inc., never operated

properly, and, despite many efforts to repair the equipment, the plant's processing volume never

rose above eighty (80) tons a day.  [Doc. No. 47, p. 5].  Approximately fifteen (15) months after

it began operating, the plant caught fire, and it has since ceased operations.  [Doc. No. 1-1, ¶ 7].

On February 5, 2009, Hollybrook filed a Complaint [Doc. No. 1-1] against Carver, Inc.,

and five other defendants in the Fifth Judicial District, East Carroll Parish, Louisiana, alleging claims for breach of contract, redhibition, and violations of Louisiana Civil Code articles 2524 and 2529.  In its Complaint, Hollybrook seeks damages for lost profits; wages and repair costs during the time the plant was not operational; expenses incurred in converting the building into a cottonseed processing plant; return of the purchase price; and amounts spent repairing and replacing the equipment.  On May 7, 2009, the case was removed to this Court.

On February 12, 2009, Carver, Inc., with Defendants Carver-Gump and Lummus Corp. (collectively, "Carver"), filed a Motion for Summary Judgment [Doc. No. 42], arguing, among other things, that the Louisiana Products Liability Act ("LPLA"), LA. REV. STAT. §§ 9:2800.51-.60, precludes all of Hollybrook's claims except redhibition.

On March 11, 2010, the Court entered a Ruling and Judgment [Doc. Nos. 124 and 125] ("Ruling") granting in part and denying in part Carver's Motion for Summary Judgment.  As part of its Ruling, the Court held that Hollybrook's breach of contract and breach of warranty claims were either subsumed by its redhibition claim or precluded by the LPLA to the extent they claimed damages caused by Carver's products.

On March 19, 2010, Hollybrook filed its Motion to Amend, asking the Court to amend its Ruling on the applicability of the LPLA to Hollybrook's breach of contract and article 2524 claims only.  On April 8, 2010, Carver filed a Memorandum in Opposition [Doc. No. 148] to Hollybrook's Motion to Amend.  On May 4, 2010, Hollybrook filed a Supplemental Memorandum in Support [Doc. No. 168] of its Motion to Amend.  On May 13, 2010, Carver filed a Response [Doc. No. 178] to Hollybrook's Supplemental Memorandum in Support of its Motion to Amend.

## II.    ANALYSIS

### A.    Standard of Review

Hollybrook filed its Motion to Amend pursuant to Federal Rule of Civil Procedure 59(e).

Under Rule 59(e), parties may file motions to alter or amend a judgment within twenty-eight

days of entry of the judgment.  Rule 59(e) "serve[s] the narrow purpose of allowing a party to

correct manifest errors of law or fact or to present newly discovered evidence."  *Templet v.*

*HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004).

### B.    Analysis

#### 1.    The LPLA and Redhibition

The LPLA "establishes the exclusive theories of liability for manufacturers for damages

caused by their products."  LA. REV. STAT. § 9:2800.52.  Damages available under the LPLA

include "damage to the product itself and economic loss arising from a deficiency in or loss of

use of the product **only to the extent** that Chapter 9 . . . of the Civil Code entitled 'Redhibition'

does not allow recovery for such damage or economic loss arising from a deficiency in or loss of

use of the product."  LA. REV. STAT. art. 9:2800.53(5) (emphasis added).

Louisiana Civil Code article 2520, under the Redhibition Chapter, provides a cause of

action for breach of the implied warranty against redhibitory defects.  LA. CIV. CODE art. 2520.

Article 2520 defines redhibitory defects as those that render a thing useless, or so inconvenient

that the buyer would not have bought the thing if he had known of the defect.[1]  *Id.*  The remedy

for breach of the warranty against redhibitory defects is rescission of the contract or reduction of

---

[1] A defect is also redhibitory "when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price."  LA. CIV. CODE art. 2520.

3

the price, but if the seller knew of the defect, he may also be held liable for damages and attorney's fees. *Id.*; LA. CIV. CODE art. 2545.

Louisiana Civil Code articles 2524 and 2529 are also located in the Redhibition Chapter, and also state causes of action for breach of warranties (the implied warranty of fitness of the thing and the express warranty to deliver the promised kind or quality of thing, respectively). LA. CIV. CODE arts. 2524, 2529. However, both articles state that the remedies for breach of the warranties described in them are governed by general contract law. *Id.*

### 2. Hollybrook's Objections to the Court's Ruling

In its Ruling, the Court held that Hollybrook's breach of contract[2] claims are subsumed by the LPLA "to the extent Hollybrook claims damages caused by the allegedly defective equipment." [Doc. No. 124, p. 13]. The Court based this Ruling on the LPLA's exclusivity provision, which, as noted above, provides that the LPLA is the exclusive theory of liability for manufacturers for damages caused by their products, with one exception: redhibition claims for damage to the product itself or economic loss.[3]

Additionally, after a review of the comments accompanying articles 2524 and 2529, the Court concluded that:

> The drafters of the Redhibition Chapter made clear they wished to distinguish causes of action based on breach of the warranty against redhibitory defects

---

[2] When the Court refers to general contract law, it is referring to the law of conventional obligations, found in Louisiana Civil Code, Book III, Title IV, and, where applicable, the law applying to contracts of sale, found in Louisiana Civil Code, Book III, Title VII. The Court deals separately with the more specific law of redhibition because it is singled out by the LPLA, although it is located within the Code provisions applying to contracts of sale.

[3] For the sake of brevity, the Court shortens the term "economic loss arising from a deficiency in or loss of use of the product" to simply "economic loss."

4

[article 2520] and causes of action based on breach of implied or express warranties not involving redhibitory defects [articles 2524 and 2529].  Causes of action under articles 2524 and 2529 are available only when redhibition under article 2520 is not, and for claims brought under articles 2524 and 2529, the drafters directed courts to the general law of obligations.  Thus, claims brought under articles 2524 and 2529 are breach of contract claims, not redhibition claims.

The LPLA preempts breach of contract claims brought against manufacturers for damages caused by their products.  Therefore, the LPLA preempts claims brought under articles 2524 and 2529 against manufacturers for damages caused by their products.  [citations omitted].

In this case, there is an issue of fact as to whether the equipment Hollybrook bought from Carver had redhibitory defects.  If it did have redhibitory defects, then Hollybrook's claims under article 2524 and 2529 are subsumed by its claim under article 2520 for breach of the warranty against redhibitory defects.  If the equipment was free of redhibitory defects, Hollybrook's claims under article 2524 and 2529 are subsumed by the LPLA to the extent Hollybrook claims damages caused by Carver's products.

[Doc. No. 124, pp. 15-16].

Hollybrook objects to the portions of the Court's Ruling quoted above.  In its Motion to Amend, Hollybrook argues that the Court fundamentally misunderstands the purpose of the LPLA, incorrectly limiting its breach of contract and redhibition claims.  Hollybrook offers no new evidence, but takes issue with the Court's determination that the LPLA exclusivity provision applies to contract, as well as tort, theories of liability.  For the following reasons, the Court finds that it has committed no manifest error of law.

### 3. The LPLA's Exclusivity is Not Limited to Tort Theories of Liability.

Hollybrook's primary argument is that the LPLA sets forth the exclusive remedy for a manufacturer's *tort* liability only.  Therefore, Hollybrook concludes, the LPLA does not preclude

its claims based on redhibition and contract theories of liability.[4]

First, Hollybrook is correct in asserting that the LPLA does not preclude its redhibition claims. The Court's Ruling did not hold that Hollybrook's redhibition claims were precluded, though, so Hollybrook's arguments on this point are moot.[5]  The Ruling did, however, find that the LPLA precludes Hollybrook's general breach of contract claims to the extent they seek damages caused by Carver's products, so the Court will address Hollybrook's arguments on this issue.

To support its argument that the LPLA does not preclude its breach of contract claims, Hollybrook reviews the legislative history of the LPLA, arguing it was "crafted to be the last word in the evolution of products liability law and to set forth the criteria for manufacturers' liability in tort."  [Doc. No. 127-1, p. 3].  The Court agrees that the LPLA is meant to preempt all tort theories of liability for manufacturers of products and that, perhaps, primarily tort cases spurred the creation of the LPLA.  However, pre-LPLA products liability cases frequently were hybrids that dealt with contract theories of liability as well as tort theories.  *See Reliance Trust v. Texas Gas Transmission Corp.*, 499 So.2d 202, 205 (La. App. 2 Cir. 1986) (citing examples and stating "[m]ost jurisprudence recognizing this hybrid action . . . deals with redhibition and/or

---

[4] Hollybrook also argues that because it did not bring its case under the LPLA or allege any tort theories, the LPLA does not apply.  However, "[c]ourts look to the content of the pleadings to ascertain the nature of the complaint rather than to the labels placed on the pleadings."  *Saylor v. Villcar Realty, LLC*, 2008-0035, p. 3 (La. App. 4 Cir. 11/19/08); 999 So. 2d 61, 64.  Further, courts have held that the LPLA applies even when not specifically pled.  *See, e.g., In re Air Bag Prods Liab. Litig.*, 7 F. Supp. 2d 792 (E.D. La. 1998).

[5] Hollybrook also argues that the Court incorrectly *limited* its rights under redhibition by finding that a claim brought under article 2524 was not a redhibition claim.  The Court addresses this issue below.

products liability."); *Champion v. Panel Era Mfg. Co.*, 410 So.2d 1230, 1236 (La. App. 3 Cir. 1982) ("[T]he factual allegations of a petition for redhibition may also state a cause of action in tort, and . . . the claims could arise from redhibition, tort, breach of contract, negligence or products liability.").

More importantly, the LPLA's exclusivity provision does not limit its application to tort theories of liability. Rather, it states broadly that the LPLA provides "the exclusive theories of liability for manufacturers for damages caused by their products." The drafters chose to define the preclusive effect of the LPLA by the *cause of damages sought*, not the type of theory the claim for damages is based upon. Therefore, the plain language of the LPLA precludes any claim against a manufacturer for damages caused by its products, regardless of the theory of recovery, except for redhibition claims.[6]

Redhibition claims for damage to a product itself or economic loss are the only exceptions to the LPLA's exclusivity provision. *See* LA. REV. STAT. art. 9:2800.53(5); *Aucoin v. Southern Quality Homes, LLC*, 2007-1014, p. 7, n.8  (La. 2/26/08); 984 So.2d 685, 691. However, redhibition claims are excepted because the LPLA specifically excludes them, not

---

[6] The Court finds additional support for its reading of the LPLA's exclusivity provision in the fact that the LPLA excepts redhibition from its preclusive effect. The implied warranty against redhibitory defects is a specialized breach of contract theory of products liability. If the drafters of the LPLA intended to except damages available under *all* contract and warranty theories of liability, they could have done so here—instead, they singled out redhibition. Additionally, one of the theories of liability available under the LPLA is "nonconformity to express warranty." LA. REV. STAT. art. 9:2800.58. Breach of express warranty is also a specialized breach of contract theory of liability, yet it is provided for within the LPLA. Finally, the LPLA's definition of damages specifically includes damages to the product itself or economic loss, to the extent those damages are not available under redhibition. LA. REV. STAT. art. 9:2800.53(5). As Hollybrook correctly points out, these types of damages caused by products are usually sought under breach of contract or warranty claims, yet they, too, are provided for within the LPLA.

because it is intended to preclude only tort theories of liability.  The Court will not read an

implicit tort theory limitation into the LPLA's exclusivity provision, as Hollybrook does.[7]

### 4.       The LPLA's Exclusivity is Not Limited by the Nature of Damages a Product Causes, Unless Redhibition is Available.

In its Supplemental Memorandum in Support of its Motion to Amend, Hollybrook argues

that the LPLA does not preclude its breach of contract claims because it seeks only damages for

its economic loss caused by redhibitory defects, and the LPLA precludes only personal injury and

damage to other property.[8]  [Doc. No. 168].

As explained above, the Court agrees with Hollybrook that the applicability of the

LPLA's exclusivity provision depends on the damages sought.  However, to the extent

Hollybrook argues that the LPLA exclusivity provision does not apply to its claims for economic

loss, the Court cannot agree.  The exclusivity provision defines its scope of application by the

cause of damages, not their nature.  "Damages" as defined under the LPLA specifically include

"damage to the product itself and economic loss," although only to the extent redhibition does

---

[7] Louisiana case law supports the Court's reading of the LPLA.  *See Stroderd v. Yamaha Motor Corp.*, No. 04-3040, 2005 WL 2037419, at *2 (E.D. La. Aug. 4, 2005); *In re Air Bag Prods Liab. Litig.*, 7 F. Supp. 2d at 800; *Touro Infirmary v. Sizeler Architects*, 2004-2210, 2005-1265, pp.7-8 (La. App. 4 Cir. 11/21/06); 947 So.2d 740, 745.

[8] As support for this argument, Hollybrook cites the recent Fifth Circuit case *Chevron USA, Inc. v. Aker Maritime, Inc., et al.*, No. 07-31117, 2010 WL 1660092 (5th Cir. April 27, 2010).  This case describes the intersection between the LPLA and redhibition, holding that the damages in that case were not economic loss or damage to the property itself, but were damage to other property, and so were available against the defendant only under the LPLA, not redhibition. It does not support Hollybrook's argument that the LPLA does not preclude claims for economic loss brought under contract or warranty theories other than redhibition.

8

not allow recovery for them.[9]  LA. REV. STAT. art. 9:2800.53(5); *Bearly v. Brunswick Mercury Marine Div.*, 39,069, p. 5 (La. App. 2d Cir. 10/27/04); 888 So.2d 309, 312 ("[A]ll [commentators] seem to agree that the consumer will have a right to recover against the manufacturer for purely economic loss, whether under the LPLA or in redhibition.").

When the LPLA provision defining damages is read with the LPLA's exclusivity provision, it indicates that, not only does the LPLA apply to economic loss caused by a product and not available under redhibition, the LPLA provides the *only* avenue against a manufacturer for such damages.  In other words, if one seeks to recover for economic loss caused by a product, one can recover against the manufacturer only under redhibition or, if that fails, only under the LPLA.[10]

The Court agrees that, if Hollybrook seeks only damages for economic loss caused by redhibitory defects in Carver's equipment, its remedy is in redhibition, and the LPLA does not preclude that claim.  However, if redhibition is not available for some reason, Hollybrook's alleged damages caused by Carver's products are available only under the LPLA.  General breach of contract is not an available theory for damages caused by a product, regardless whether one

---

[9] Strangely, Hollybrook appeared to understand this point in certain parts of its original Motion to Amend.  [*See* Doc. No. 127-1, p. 4, stating that "[t]he only way a person may pursue damages to the product itself and any economic loss . . . under the LPLA is when that person cannot recover under the redhibition laws." (emphasis in original)].

[10] Hollybrook argues that the Court's decision in *Dawson Farms, LLC v. BASF Corp., et al.*, No. 06-0737, 2008 WL 5220517 (W.D. La. Dec. 12, 2008), supports its theory that the LPLA does not apply to economic loss.  Hollybrook is incorrect because, in *Dawson Farms*, the Court merely proposed to grant summary judgment *sua sponte* on the Plaintiff's LPLA claims on the basis that the Plaintiff could not proceed under the LPLA alleging only economic loss, and allowed briefing on this issue.  After briefing, the Court correctly elected not to enter summary judgment as it had proposed, and allowed the Plaintiff to go forward with its LPLA claim.

seeks recovery for economic loss or personal injury.[11]

>     **5.**     **Claims Brought Under Articles 2524 and 2529 Are Not Redhibition Claims**

Hollybrook claims damages for breach of the implied warranty against redhibitory defects (Louisiana Civil Code article 2520) and the implied warranty of fitness (Louisiana Civil Code article 2524).  [Doc. No. 1-1, ¶ 10].  Hollybrook argues the Court's Ruling incorrectly limits its redhibition claim by finding that a breach of the warranty of fitness is separate and distinct from a breach of the warranty against redhibitory defects and is governed by the general law of contract. [Doc. No. 127-1, p. 5].  In its Ruling, the Court concluded that, despite the inclusion of article 2524 in the Redhibition Chapter, article 2524 directs claims brought under it out of the Redhibition Chapter and into the general law of contract.  This interpretation takes claims for damages brought under article 2524 out of the LPLA's redhibition exception.

The Court incorporates by reference the analysis in its previous Ruling [Doc. No. 124] for the holding that article 2524 claims are distinct from article 2520 claims and are general contract claims.  The Court notes, further, that Hollybrook does not object to the Court's same holding regarding its article 2529 claim, also cited as a cause of action in Hollybrook's Complaint.[12]

---

[11] In reaching its conclusion that the LPLA precludes recovery for economic loss arising from breach of warranty or breach of contract theories other than redhibition, the Court disagrees with the court in *McAuslin v. Grinnell Corp.*, Nos. 97-775, 97-803, 98-2200, 2001 WL 8584, at *2 (E.D. La. Jan. 3, 2001) ("While the LPLA governs products liability in tort, it does not preclude recovery for economic loss arising from breach of warranty or breach of contract."). Regardless, the Eastern District of Louisiana appears to have changed its stance with regard to the LPLA's preclusion of contract-related claims.  *See Stroderd*, 2005 WL 2037419, at *2.

[12] Louisiana courts agree with the Court that article 2529 is a general contract claim precluded by the LPLA, not a redhibition claim.  *See Touro Infirmary*, 2004-2210, 2005-1265; 947 So.2d 740 (holding that the LPLA precludes recovery under general contract law for breach of express warranty).  Louisiana courts also have found that claims brought under both article

Both articles 2524 and 2529 are located in the Redhibition Chapter and state causes of action for breach of warranty.  The articles use very similar language to direct claimants to the general law of contracts for recovery of damages resulting from breach of these warranties.  The Court concluded in part that a claim brought under article 2524 is a general breach of contract claim because it could find no legitimate reason to treat the two articles differently, given the similarity of their wording and accompanying comments.  For this reason, the Court re-evaluated its analysis in *Dawson Farms , LLC v. BASF Corp., et al.*, No. 06-0737, 2008 WL 5220517, at *1 (W.D. La. Dec. 12, 2008), and determined that, like article 2529 claims, article 2524 claims lie in general breach of contract, not redhibition.  [Doc. No. 124, p. 15, n. 9].  The Court finds no basis to revisit its Ruling on this issue.

## III.    CONCLUSION

For the reasons stated above and in its previous Ruling [Doc. No. 124], the Court previously granted summary judgment on all of Hollybrook's claims seeking damages caused by Carver's products, except its redhibition claims.  The Court attempted to carefully distinguish in its Ruling that it did not dismiss Hollybrook's general breach of contract claims (including its article 2524 and 2529 claims) in their entirety—just to the extent they sought damages caused by Carver's products.  While Hollybrook may be correct that the Ruling complicates the trial issues in the case, the Court cannot ignore the distinction created by the exclusivity provision of the LPLA.  The Court's Ruling is consistent with the LPLA, but clarifies that a plaintiff is not

_____

2524 and 2529 are general breach of contract claims, not redhibition claims, for the purpose of determining the applicable statute of limitations.  *See Cunard Line Limited Co. v. Datrex, Inc.*, 05-1181 (La. App. 3 Cir. 4/5/06); 926 So.2d 109; *Morris & Dickson Co. v. Jones Brothers Co.*, 29,379 (La. App. 2 Cir. 4/11/97); 691 So.2d 882 .

foreclosed from pursuing breach of contract claims against a manufacturer, as long as the plaintiff does not seek damages caused by the manufacturer's product.[13]

It may be that all of Hollybrook's claimed damages are available under its redhibition claim, in which case there is no problem with the LPLA here.  If not, however, whether a particular damage allegation is damage "caused by" the product will be a determination of law.  If, as trial nears, Carver has genuine concerns that Hollybrook alleges damages in violation of the Court's Ruling (i.e., caused by the product but not potentially available under redhibition[14]), it should file a Motion in Limine to exclude evidence of such damage by the appropriate deadline.

For the foregoing reasons, Hollybrook's Motion to Amend [Doc. No. 127] is DENIED.

MONROE, LOUISIANA, this 28th day of May, 2010.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

---

[13] For example, a plaintiff might suffer damages solely due to a manufacturer's breach of its contractual obligation to deliver promptly or provide technical services, or because a manufacturer sent the incorrect product and the plaintiff had to wait for a replacement.  In such cases, a plaintiff might argue the damages suffered were not caused by the product, but only by breach of contract (or the warranties in article 2524 or 2529).  Legal theories might also separate the cause of damages, particularly in situations where an express term of the contract is violated.  Rather than summarily foreclose Hollybrook's ability to argue its case under breach of contract or warranty theories, the Court emphasized that it dismissed these claims only to the extent they sought damages caused by Carver's products.

[14] The Court does not invite Carver to reargue the sufficiency of Hollybrook's redhibition claim here.  The Court has already determined that Hollybrook has put forth evidence sufficient to create a genuine issue of material fact for trial regarding whether Carver's products had redhibitory defects.  [*See* Doc. Nos. 175 and 176].