UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| HOLLYBROOK COTTONSEED PROCESSING, LLC | CIVIL ACTION NO. 09-750 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| CARVER, INC., ET AL | MAGISTRATE JUDGE JAMES KIRK |

## MEMORANDUM ORDER

Before the Court are Memoranda submitted by the parties, Hollybrook Cottonseed Processing, LLC ("Hollybrook") and American Guarantee & Liability Insurance Co. ("AGLIC"), on the issues of: (1) the applicability of comparative fault to a redhibition claim [Record Documents 400, 401 and 414]; (2) the extent to which renovation costs and other costs incurred prior to the purchase of the allegedly redhibitory equipment and attorney fees are recoverable under Article 2545; and (3) the extent to which the relevant insurance policy provides coverage over these damages [Record Documents 385, 386, 387 and 391].

In order to assist counsel with the presentation of evidence at the upcoming trial, the Court rules as follows.  First, comparative fault, under the Louisiana Civil Code Article 2323, is inapplicable to the redhibition claim asserted here as a matter of law. Second, whether renovation costs and other costs incurred by Plaintiff prior to the purchase of the Carver, Inc. ("Carver") equipment were "occasioned by the sale" under Article 2545 is a question of fact to be determined by the jury.  Third, attorney fees are

recoverable under Article 2545 to the extent that they are fees relating to the recovery of economic loss for the redhibitory defect only.  As to the last issue, whether the relevant insurance policy may cover damages in the form of renovation costs and attorney fees, and in the absence of any specific pending motion on this issue the Court makes no ruling at this time but refers the parties to its prior ruling with regard to insurance coverage for guidance in presenting the evidence to the jury. [See Record Document 353].

**I.      Comparative Fault is Inapplicable to Plaintiff's Redhibition Claim**

The parties dispute whether Louisiana Civil Code Article 2323 on comparative fault is applicable to Plaintiff's redhibition claim.  Article 2323(A) provides: "In any action for damages . . . the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined. . . ."  Article 2323(A) applies "to any claim for recover of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability."  Defendant argues that the broad "any claim" and "any law or legal doctrine or theory of liability, regardless of the basis of liability" language of Article 2323 extends the applicability of comparative fault to all causes of action in Louisiana.

Despite the expansive language of Article 2323, Louisiana Circuit Courts are split as to the applicability of comparative fault to redhibition claims.  See Aucoin v. Southern Quality Homes, LLC, 07-1014 (La. 2/26/08), 984 So. 2d 685, 693 n.12.  Louisiana Circuit Courts are not in agreement as to whether the Legislature intended to expand

comparative fault, a tort-based concept, to all claims, including contractual, redhibition, and property claims, "regardless of the basis of liability." Compare Touro Infirmary v. Sizeler Architects, 04-0634 (La. App. 4 Cir. 3/23/05), 900 So. 2d 200, 204-06 (holding that Article 2323's "comparative fault is a tort based concept . . . under the title 'Offenses and Quasi Offenses' in the Civil Code" which "applies only to actions based in tort"); with, Petroleum Rental Tools, Inc. v. Hall Oil & Gas Co., Inc., 701 So. 2d 213, 217-18 (holding that limiting the application of comparative fault to a redhibitory defect claim "would be to fail to give effect to the phrase in Article 2323(B), 'regardless of the basis of liability.'").

In 1979, Louisiana amended Article 2323 to adopt a comparative fault regime. The 1979-version of Article 2323 provided that "when contributory negligence is applicable to a claim for damages" (emphasis added), the courts should employ a pure comparative fault regime. Frank L. Maraist and Thomas C. Galligan, Jr., Burying Caesar: Civil Justice Reform and the Changing Face of Louisiana Tort Law, 71 Tul. L. Rev. 339, 374-77 (1996). The pivotal word "when" created an "open-ended comparative fault statute" that left the question of "when is contributory fault applicable" to the courts. Id. The Louisiana Supreme Court eventually adopted a duty/risk-type inquiry by which courts would determine whether comparative fault should apply to the particular case at hand. Id. (citing Bell v. Jet Wheel Blast, 462 So. 2d 166 (La. 1985) (holding that whether comparative fault should be applied to reduce

damages in a products liability case turned on whether application of comparative fault would provide consumers with an incentive to use the product carefully)).

In 1996, the Louisiana Legislature amended Article 2323 (along with Article 2324), La. Acts 1996, 1st Ex. Sess., No. 3, to provide that comparative fault applied in "all" cases.[1]  La. Civ. Code art. 2323(A).  The amendment overturned the discretionary duty/risk-type analysis for comparative fault adopted by the Louisiana Supreme Court.  Maraist and Galligan, supra, at 382-83.  The Legislature made clear that Article 2323 was intended to apply to "all" cases, including products liability, strict liability, and absolute liability cases.  Less clear was whether the new Article 2323 was intended to extend beyond the Chapter "Of Offenses and Quasi Offenses" to apply to actions based in contract, including redhibition, in addition to actions based in tort.  Id. (discussing the effect of the 1996 Amendments to Article 2323 and stating that "comparative fault may apply not only to a tort action but to a contract claim (including redhibition), a property claim, and perhaps others" (emphasis added)).[2]

---

[1] The only exception expressly stated is for cases involving an intentional tortfeasor.  La. Civ. Code art. 2323(C).

[2] At the same time that the Legislature amended Article 2323, it amended Article 2324 to remove solidary liability in all cases except for those where the defendant commits an intentional or willful act.  However, Comment "c" under La. Civ. Code art. 2545 states that the manufacturer and the sellers in the chain of title are solidarily liable in a redhibition claim, relying on two cases from the 1970's.  See La. Civ. Code art. 2545 cmt.c; see generally Pipitone v. Biomatrix, Inc., 288 F.3d 239, 251 (5th Cir. 2002) (holding there is a strong presumption under Louisiana law against implied repeals).  Nonetheless, the liability of multiple sellers is divisible in proportion to the interest of each under Article 2538.

Nonetheless, in this case, where the manufacturer is also the seller of the allegedly redhibitory thing, comparative fault is inapplicable to Plaintiff's redhibition claim as a matter of law. Because Defendant is both the manufacturer and seller, there can be no allocation of fault among various defendants for the damages caused by the redhibitory defect. Further, vis a vis the plaintiff-buyer and defendant-seller, the articles on redhibition make comparative fault inapplicable. Under the Chapter for redhibition, a redhibitory defect is defined by the reasonably prudent buyer standard. Article 2521 provides: "The seller owes no warranty for defects in the things that were known to the buyer at the time of the sale, or for defects that should have been discovered by a reasonably prudent buyer of such things." In other words, under Article 2521, if a reasonably prudent buyer should have discovered the defect in the thing, then recovery under the chapter on redhibition is wholly defeated. See also Badon v. R J R Nabisco, Inc., 224 F.3d 382, 398 (5th Cir. 2000) ("[U]nder article 2521 recovery in redhibition is apparently wholly defeated–regardless of comparative fault–if the defect is either known to the buyer or is one which should have been discovered by a reasonably prudent 'buyer of such things.'"). Defects are simply not redhibitory if the defect should have been discovered by a reasonably prudent buyer of such things. Thus, the negligence of the purchaser in the non-discovery of a defect wholly bars recovery under Article 2521. If the Court were to reduce the recovery amount upon a finding that Plaintiff had been negligent in its purchase under Article 2323, then the Court would have to ignore the more specific Article 2521.

That said, the inapplicability of Article 2323 does not preclude a reduction in damages for Plaintiff's failure to mitigate damages due to the redhibitory defect in the thing purchased. La. Civ. Code art. 2002. The Plaintiff concedes this point. Post-sale, a failure on the part of Plaintiff to identify the defect after it evidences itself or to prevent foreseeable damages once the defect is identified may warrant a reduction in damages under Article 2002.

Further, damages are limited to only those damages "caused by" the redhibitory defect, and not those damages attributable to other causes. La. Civ. Code art. 1994. Therefore, while comparative fault is inapplicable to Plaintiff's redhibition claim, failure to mitigate and questions of causation remain and may serve to limit the extent of damages attributable to any redhibitory defect and therefore recoverable by the Plaintiff.[3]

---

[3]The Court is further persuaded by the fact that comparative fault is a tort-based concept, and the Court finds that its inclusion in Title V, Chapter III of Book III titled "Of Offenses and Quasi Offenses" is instructive. See Touro Infirmary, 900 So. 2d at 204-06. The remedies available for actions in tort differ from those available on redhibition or contract actions. Aucoin v. Southern Quality Homes, LLC, 06-979 (La. App. 3 Cir. 2/28/07), 953 So. 2d 856, 860, affirmed in part on other grounds, 07-1014 (La. 2/26/08), 984 So. 2d 685. It is not apparent that Article 2323's effect should reach across the entirety of the Civil Code. But see Chevron U.S.A., Inc. v. Aker Maritime, Inc., 2008 WL 594648 (E.D. La. 2008) (holding that comparative fault applies in redhibition claim and that defendants should split the amount of attorney fees due by the percentage of fault attributable to each; reversing magistrate judge's finding to the contrary), reversed on other grounds by, 604 F.3d 888.

## II. Whether Renovation Costs were "Occasioned by the Sale" is a Question of Fact

The parties dispute whether Plaintiff can recover costs incurred prior to its purchase of the Carver equipment. The Court holds that whether any of these costs are recoverable is a question of fact. The Louisiana Supreme Court has stated that the "basic purpose" of the remedy to a redhibition action is "to return the parties to their original position: to restore the status quo." Young v. Ford Motor Co., Inc., 595 So. 2d 1123, 1127 (La. 1992); Aucoin v. Southern Quality Homes, 07-1014 (La. 2/26/08), 984 So. 2d 685, 692 ("The purpose of the redhibition action in Louisiana, as was the case in Roman law, has been to restore the status quo."); see also Floyd W. Lewis, Comment, Warranty of Quality in Louisiana: Extent of Recovery under the Implied-In-Law Warranty, 23 Tul. L. Rev. 130, 131 (1948). Recovery of "expenses occasioned by the sale" is warranted in the case of good faith redhibition as well as bad faith redhibition. La. Civ. Code arts. 2531, 2545.

The question of whether Plaintiff's renovation costs constitute "expenses occasioned by the sale" turns on whether the expenses were brought about or caused by the purchase of the thing with the alleged redhibitory defect. The Court cannot say as a matter of law that these renovation costs were not "occasioned by the sale." Whether the costs were "occasioned by the sale" is a question of fact.

### III. Recovery of Attorney Fees under Article 2545 is Limited by the Extent to Which Plaintiff's Claim is for Economic Loss

Defendant argues that attorney fees under Article 2545 are not recoverable in law because Plaintiff's claim rests on proof of a vice in the Carver equipment. Proof of a vice overlaps with proof of a defective product on Plaintiff's products liability claim, for which attorney fees are not recoverable. Defendant argues that because there is an overlap in proof of vice or defect in the thing, attorneys fees are not recoverable in law on Plaintiff's redhibition claim.

Defendant's argument, however, is contrary to the weight of precedent interpreting the relationship between the Louisiana Products Liability Act ("LPLA") and the Chapter on Redhibition. The LPLA preserves a consumer's right to sue the manufacturer in redhibition for recovery of economic loss. La. R.S. 9:3800.53(5); see, e.g., De Atley v. Victoria's Secret Catalogue, 04-661 (La. App. 4th Cir. 5/14/04), 876 So. 2d 112. When the plaintiff asserts both products liability and redhibition claims, the LPLA preserves the right to recovery of attorney fees, but only insofar "as those fees relate to the recovery of purely economic loss" pursuant to the plaintiff's redhibition claim under to Article 2545. See, e.g., De Atley, 876 So. 2d 112; Safeco Ins. Co. of Am. v. Chrysler Corp., 01-1641 (La. App. 3 Cir. 7/31/02), 834 So. 2d 1026; Frank L. Maraist and Thomas C. Galligan, Jr., Louisiana Tort Law § 15.06 (2d ed. 2004) (filed through release no. 7, Nov. 2010). The Court holds that, upon a finding of bad-faith redhibition,

Plaintiff may recover attorney fees insofar "as those fees relate to the recovery of purely economic loss" in accordance with De Atley.

### IV. Coverage under the AGLIC Insurance Policy may Extend to Renovation Costs and Attorney Fees in Accordance with this Court's Prior Order

Of course, wether AGLIC is liable for any costs incurred prior to the purchase of the Carver equipment and for attorney fees also turns on whether the insurance policy provides coverage for such damages. This Court has ruled previously on a Motion for Summary Judgment on the issue of coverage afforded under the insurance policy issued by AGLIC to Carver for the damages claimed by Hollybrook. [Record Document 353].[4]

The Court found that economic damages fell within the coverage of the insurance policy, and that questions of fact remained as to whether the economic damages fell into an exclusion to the insurance policy.[5] The insurance policy covers "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' included within the 'products-completed operations hazard' to which this insurance applies. . . ." "Property damage" is defined as:

> 1) "Physical injury to tangible property, including all resulting loss of use of that property."

---

[4] The Court relied on Martco Ltd. Partnership v. Wellons, Inc., 588 F.3d 864 (5th Cir. 2009) and Steward Interior Contractors, LLC v. Metalpro Indus., LLC, 07-251 (La. App. 4 Cir. 10/10/07), 969 So. 2d 653.

[5] The excess insurance policy issued by AGLIC, Policy Number AUC 9301095 05, follows form to the terms and conditions of the insurance policy issued by Sentry.

        2)     "Loss of use of tangible property that is not physically injured."

Any loss of use is deemed to occur at the time of the physical injury or occurrence that caused the loss of use. Thus, the Court holds that the mere fact that renovation costs or other damages were incurred by the Plaintiff prior to the inception of the policy does not necessarily preclude insurance coverage for those items.

The Court has ruled that exclusions in the insurance policy limit the term "property damage." The exclusions preclude coverage to the Carver equipment that must be repaired or replaced, but not coverage to damages incurred due to the loss of use of other property. Further, the Court addressed the issue of the "Impaired Property" exclusion. [Record Document 353].

Because no evidence has yet to be produced and in the absence of a specific motion, the Court declines to rule definitely on the issue of whether the AGLIC policy provides coverage for attorney fees.

**IT IS SO ORDERED.**

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE