RECEIVED

DEC 3 0 2013

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT LOUISIANA
BY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| HOLLYBROOK COTTONSEED PROCESSING, LLC | CIVIL ACTION NO: 09-0750 |
| VERSUS | JUDGE DONALD E. WALTER |
| CARVER, INC., ET AL | MAGISTRATE JUDGE KIRK |

### MEMORANDUM RULING

A jury trial in the above captioned matter was held solely on the issue of damages.[1] The jury determined that defects in the Carver equipment caused damages to Hollybrook Cottonseed Processing, LLC ("Hollybrook") in the following amounts: (1) $3,570,000.00 for lost profits, (2) $381,042.00 for the purchase price of the Carver equipment,[2] and (3) $2,500,000.00 for other compensatory damages, if any, excluding lost profits and the purchase price of the equipment. [Doc. #596].

Before judgment may be entered in this matter the court must first determine whether insurance coverage issues remain unresolved, and if so, resolve them.[3] The parties were ordered to brief the court regarding the availability of insurance coverage and the effect of any previous rulings issued by

---

[1] A new trial solely on the issue of damages was required because Judge Foote found that one of AGLIC's original attorneys violated a court order to such a degree that it impacted the jury deliberations.

[2] This court has previously ruled, and both parties agree, that the purchase price of the Carver equipment is not covered pursuant to the "your work/your product" exclusion. [Doc. #353].

[3] AGLIC maintains that there are coverage issues that remain to be resolved. Hollybrook contends that the issue of coverage has already been decided.

Judge Elizabeth Erny Foote regarding the same.[4]

## STATEMENT OF THE CASE

This cause of action was originally filed by Hollybrook in the Sixth Judicial District Court for the Parish of East Carroll, Louisiana, alleging that Hollybrook suffered damages when it purchased defective equipment from Lummus Corp., and Carver, Inc. (herein "Carver"). Hollybrook named numerous defendants including Carver's primary insurer, Sentry Insurance Co. ("Sentry"). The matter was removed to federal court. Thereafter, Hollybrook amended its original complaint to add Carver's excess insurer, American Guarantee & Liability Insurance Company ("AGLIC") as a defendant. AGLIC is the only remaining defendant in this litigation. All other defendants, including Sentry, settled with Hollybrook or were dismissed prior to the first trial.

### A.     Prior Coverage Rulings by the Court [5]

Before the original trial, Judge Foote issued several orders regarding the issue of insurance coverage. The most significant order addressed coverage issues raised by Sentry and AGLIC in their respectively filed Motions for Summary Judgment. [Doc. #353]. First, Judge Foote noted that the AGLIC policy is a "follow form" policy, such that the terms and conditions of the underlying Sentry policy are made part of the AGLIC excess policy. [Doc. #353 at 4]. Second, Judge Foote found that Louisiana law controlled the interpretation of the insurance policies in question. [Doc. #353 at 13]. Third, relying on *Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 879 (5th Cir. 2009), Judge Foote

---

[4] This matter was transferred to the undersigned on October 29, 2012, after Judge Foote recused herself from the case.

[5] AGLIC encourages the undersigned to revisit some of Judge Foote's prior rulings. This case has unfortunately had a long and convoluted history and now rests with the undersigned, the third judge assigned to this case. The undersigned declines to further confuse the litigation by modifying previously issued rulings.

found that Hollybrook's claims for "economic damages" fell within the definition of "property damage" under the terms of the insuring agreement, meaning that if a jury were to find Carver liable coverage would be available unless an exclusion in the policy applied to preclude coverage.[6] [Doc. #353 at 20-21].

Thereafter, Judge Foot considered whether any relevant exclusions would preclude recovery. Sentry and AGLIC argued that the "your product" and/or "your work" exclusions precluded recovery for any costs associated with repairing or replacing the Carver equipment, or for any other damages attributable to the defects in Carver's equipment. Judge Foote agreed that the exclusion precludes coverage for any damages arising from the cost of repairing or replacing the Carver equipment itself, noting that Louisiana jurisprudence has consistently recognized that a CGL policy is not intended to guarantee the quality of an insured's product or work. [Doc. #353 at 24]. However, Judge Foote found that coverage remained for consequential damages that Hollybrook may have incurred as a result of damage to "other property" (i.e. non-Carver). [Doc. #353 at 24-25; Doc. #409 at 2].

Next, Judge Foote considered whether the "damage to impaired property/property not physically injured" exclusion would preclude coverage. Judge Foote first considered whether Hollybrook's property should be found to be "impaired property" as defined in the policy, and determined that it did not meet the definition. [Doc. #353 at 24-26]. Next, Judge Foote noted that the exclusion may apply to preclude coverage for damage to property not physically injured or for which only loss of use is sought. [Doc. #353 at 27 (citing *PCS Nitrogen Fertilizer, LP v. U.S. Filter/Arrowhead Inc.*, 834 So.2d 456, 459 (La. App. 1 Cir. 2002)]. Conversely, she noted that

---

[6] Hollybrook sought economic damages for (1) lost profits, (2) expenses related to wages and repair costs during the time the plant was not operational or meeting its capacity, (3) expenses of converting the building for the processing plant, and (4) return of the purchase price and amounts expended repairing or replacing the equipment.

damages based on actual physical injury to Hollybrook's plant or other non-Carver equipment would not be excluded under the provision. [Doc. #353 at 27]. Importantly, Judge Foote also noted that there is an exception to the exclusion which states: "this exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to your product or your work after it has been put to its intended use." [Doc. #579, Ex. A at 7, Ex. B at 5]. As to this point, Judge Foote found that a question of fact remained. A finding in the affirmative would preclude the exclusion from applying to exclude coverage. [Doc. #353 at 27].

**B.      Prior Factual Findings by the Jury in the First Trial**

During the first trial the jury made two factual findings relevant to the "damage to impaired property or property not physically injured" exclusion which this court must accept: (1) that neither Hollybrook's plant nor any non-Carver equipment contained therein were physically injured as a result of a redhibitory defect in the Carver equipment, and (2) that Hollybrook lost use of its plant and/or non-Carver equipment contained therein due to a sudden and accidental physical injury to the Carver equipment. [7] [Doc. #459].

## LAW AND ANALYSIS

**A.      Interpretation of Insurance Policies Under Louisiana Law**

Under Louisiana law an insurance policy is a contract between two parties and should be construed in accordance with the general rules of contract interpretation as set forth in the Louisiana Civil Code. *Cadwallader v. Allstate Ins. Co.*, 848 So.2d 577, 580 (La. 2003). Individual words and

---

[7] AGLIC argues that the "impaired property" exclusion applies to preclude coverage. The court will not address this argument because a jury has already determined that Hollybrook lost use of its plant and/or non-Carver equipment contained therein because of a sudden and accidental physical injury to the Carver equipment. This factual finding is sufficient to trigger the exception to the impaired property exclusion.

phrases used in an insurance policy are to be construed using their plain, generally prevailing meaning. La. Civ. Code art. 2047. "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole". La. Civ. Code art. 2050.

"When the words of the policy are clear and explicit and lead to no absurd consequences, the contract must be enforced as written and no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046. Ambiguous policy provisions are generally construed against the insurer and in favor of coverage. La. Civ. Code art. 2056; *Cadwallader*, 848 So.2d at 580. The insured bears the burden of proving a policy affords coverage for an incident, while the insurer bears the burden of proving the applicability of an exclusionary clause within a policy. *Jones v. Estate of Santiago*, 870 So.2d 1002, 1010 (La. 2004).

**B.     Lost Profits**

1.     "Property Damage"

The jury determined that the defects in the Carver equipment caused Hollybrook damages of $3,570,000.00 in lost profits. AGLIC argues that lost profits are a purely economic loss, and therefore, they do not constitute "property damage" as defined by the policy.[8] As noted *supra*, Judge Foote relied on *Martco*, 588 F.3d 864, to hold prior to the first trial that Hollybrook's claim for

---

[8] "Property damage" is defined as:

    a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it. [Doc. #579, Sentry Policy, Form GC00371201, Section V "Definitions" pg. 16].

5

damages, including lost profits, fell within the definition of "property damage" as defined by the policy. AGLIC encourages the court to revisit this finding, arguing that while it may have been appropriate at the summary judgment stage of the litigation the evidence actually presented at trial reveals that lost profits cannot be considered damages because of "property damage". [Doc. #597].

AGLIC contends that the facts of this case are distinguishable from *Stewart Interior Contractors, LLC v. Metalpro Industries, LLC*, 969 So.2d 653 (La. Ct. App. 2007), the Louisiana opinion cited in the Fifth Circuit's *Martco* decision. AGLIC argues that *Stewart* is distinguishable because that case involved damage to property other than the insured's product. Stewart (a contracting company) sued Metalpro (a manufacturer and supplier of steel studs) and their insurer after Stewart installed Metalpro's studs in a building, which were later found to be defective and below code requirements. AGLIC argues that it was proper to find "property damage" in that case because the steel studs caused physical damage to the sheetrock (i.e. "other property"). AGLIC maintains that because there was no physical injury to other property in the Hollybrook plant there can be no coverage.[9]

Hollybrook counters that AGLIC's reliance on a distinction in the *Stewart* case is misplaced because in Louisiana, and the terms of the policy at issue, property damage does not merely result from physical damage, but also from the loss of use of other property as a result of the sudden and

---

[9] AGLIC also argues that Hollybrook failed to present evidence of an "occurrence" necessary to give rise to coverage. The court disagrees. A jury previously decided that Hollybrook lost use of its plant and/or non-Carver equipment contained therein because of a sudden and accidental physical injury to the Carver equipment. The court also recalls evidence of repeated breakdowns of the hi-cel causing Hollybrook to lose the use of its plant. This is sufficient to establish an "occurrence" as defined in the policy, which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." [Doc. #579, Sentry Policy, Section V "Definitions" pg. 16]. *See Martco,* 588 F.3d at 879 *(citing Rando v. Top Notch Props., LLC,* 879 So.2d 821, 833 (La. Ct. App. 2004)("[T]he clear weight of the authority [] considers defects in construction that result in damage subsequent to completion to be 'accidents' and 'occurrences' when they manifest themselves.")).

accidental breakdown of the insured's product. [Doc. #598, citing *Martco* and *Riley Stoker Corp. v. Fidelity and Guaranty Insurance Underwriters, Inc.*, 26 F.3d 581 (5th Cir. 1994)].

The court agrees with Hollybrook's analysis. As Judge Foote noted, the Fifth Circuit addressed the question of whether loss of use caused by a redhibitory defect may constitute "property damage" under the terms of a CGL policy, answering in the affirmative. *Martco*, 588 F.3d at 879. This case is nearly identical. Hollybrook's lost profits were directly related to its "loss of use" of tangible property (i.e. the remainder of the plant) every time Carver's hi-cel malfunctioned and was down for repair. Moreover, loss of use of property that is not physically injured fits squarely within the definition of property damage contained in the policy. This court recalls evidence being presented regarding the number of days the Hollybrook facility was inoperable or operating at a diminished capacity because of the defective hi-cel equipment. The court is aware that AGLIC has maintained throughout the course of this litigation that Hollybrook could not prove that the facility was ever able to produce its product at the levels alleged in the lawsuit. However, the jury heard the evidence in this matter and obviously disagreed with AGLIC, finding that Hollybrook lost substantial profits due to the defective Carver equipment. Accordingly, it is the finding of this court that coverage exists for Hollybrook's lost profits found by the jury to be $3,570,000.00.

2.  "Work product" Exclusion

Alternatively, AGLIC argues that the work product exclusion precludes coverage of lost profits. Judge Foote noted that "work product" exclusions reflect the intent of the insurance industry to avoid the possibility that coverage under a CGL policy will be used to repair and replace the insured's defective products and faulty workmanship. [Doc. #353]. Thus, the exclusion would preclude coverage for the cost of repairing or replacing the Carver equipment itself, but coverage remained for damages to "other property". *Id.* Judge Foote clarified in a later decision that such

damages would include consequential damages arising from damage other property. [Doc. #409]. Judge Foote repeated in a later ruling that exclusions in the policy would preclude coverage for the cost of repairing or replacing the Carver equipment itself, but not coverage to damages incurred due to the loss of use of other property. [Doc. #436].

AGLIC encourages the court to revisit this issue. AGLIC argues that Hollybrook failed to present any evidence regarding the costs it incurred due to damages to "other property". Rather, AGLIC contends that Hollybrook consistently maintained that all of its lost profits are a direct result of the defect in the Carver equipment. AGLIC also points out the jury made a specific finding that Hollybrook's lost profits were caused by the defects in the Carver equipment. Thus, AGLIC contends that if the defects in the Carver equipment are excluded by the work product exclusion, any lost profits resulting from those defects must also be excluded.

The court will not alter Judge Foote's previous ruling concerning the work product exclusion. Prior to the first trial Judge Foote noted that Hollybrook stipulated that it is not seeking monetary damages for physical damage to other property caused by the Carver equipment. Rather, the damages at issue are the consequential damages resulting from the loss of use of the processing facility, and are therefore recoverable. *See Underwriters at Lloyd's London v. OSCA, Inc.*, 2006 WL 941794, at *22 (5th Cir. 2006). This court agrees with Judge Foote's prior ruling that the work product exclusion only precludes coverage for the cost of the Carver equipment itself.

C. **Compensatory Damages**

AGLIC argues that there is no coverage for the "other compensatory damages" awarded by the jury. As noted above, the jury awarded Hollybrook $2,500,000.00 in compensatory damages, excluding lost profits and the purchase price of the equipment. AGLIC contends that the term "other compensatory damages" is vague and therefore, the jury did not indicate what types of damages are

8

included as "other compensatory damages."[10] AGLIC maintains that Hollybrook failed to produce any evidence of what "other compensatory damages" may encompass and that one can only speculate what the damage award is intended to compensate. Finally, AGLIC argues that Hollybrook also failed to present any evidence at trial that the compensatory damages are the result of property damage caused by an occurrence.

Hollybrook responds by pointing out that it presented evidence that the plant suffered approximately seven million dollars in losses from forward contracts they could not utilize and for judgments rendered against them by customers whose sales contracts they failed to meet due to the production problems at the plant caused by the Carver equipment. Hollybrook also argues that evidence was introduced regarding their initial capital outlay to build the plant, which was lost due to the failure of the defective Carver equipment.

The jury was instructed that they were to determine the compensatory damages to which Hollybrook was entitled due to the redhibitory defect, and that the amount must be fair compensation for all of Hollybrook's damages. The jury was instructed that the purpose of compensatory damages is to make Hollybrook whole – that is, to compensate Hollybrook for the damage it has suffered as a result of the redhibitory defect. Finally, the jury was instructed to consider Hollybrook's lost profits as a portion of the compensatory damage award, but to designate that amount in a separate line item on the verdict form. [Doc. #593].

It is true that the parties and the court will never know exactly how the jury arrived at the figure of $2,500,000.00 to compensate Hollybrook for compensatory damages (excluding lost profits

---

[10] AGLIC also notes that Hollybrook did not request an instruction as to what "other compensatory damages" are or may be. It is the court's recollection that AGLIC did not raise the issue of further instruction on compensatory damages either. The goal of any trial is to have the parties judged on the merits of their case, not on an alleged error in the jury instructions to which no objection was made.

and the purchase price of the equipment). However, the court cannot agree that this means that the compensatory damage award should be stricken. As stated, *supra*, given the previous jury finding in this case the property damage is the result of an occurrence. The court has also previously held that economic damages due to the loss of use of the plant are covered under the policy. Hollybrook presented testimony that it had additional economic damages in the form of lost capital outlay and debts for obligations on contacts which it could not fulfill as a result of its lost use of the plant, which are economic losses the court has found to be covered by the policy. Based on the discussion of the relevant exclusions, such economic losses would not be excluded under the work product or impaired property exclusions. Therefore, it is the finding of this court that coverage exists for Hollybrook's damages for "other compensatory damages" found by the jury to be $2,500,000.00.

### D.  Attorney's Fees

Judge Foote specifically declined to decide whether the policy provides coverage for attorney's fees because no evidence had yet to be produced and a specific motion had not been filed. [Doc. # 436]. Therefore, this court will decide coverage for attorney's fees in the first instance.

Hollybrook argues that it is entitled to recover the attorney's fees it has incurred in the prosecution of its claims against Carver under the redhibition statute. La. Civ. Code art. 2545. Moreover, Hollybrook contends that there is coverage for attorney's fees under the AGLIC policy because AGLIC is contractually obligated to cover damages its insured becomes legally obligated to pay because of "property damage" caused by the Carver equipment. Hollybrook asserts that attorney's fees fit within the definition of "property damage" because they result from the "loss of use of tangible property that is not physically injured." AGLIC counters that attorney's fees are not covered under the policy because they do not qualify as "property damage" because they are neither for damage to tangible property nor loss of use of tangible property not physically injured. Both parties note that

there is no Louisiana jurisprudence which holds that an award of attorney's fees arising from a redhibitory defect are considered "property damage".

It is undisputed that the redhibition statute provides for attorney's fees for the litigation of a claim against a bad-faith seller. La. Civ. Code art. 2545. However, the question before the court is whether the attorney's fees in question are covered under the policy. On this issue the court agrees with AGLIC. It is the initial burden of the insured to prove that a policy affords coverage for an incident. *Jones v. Estate of Santiago*, 870 So.2d 1002, 1010 (La. 2004). The court is not convinced, especially in the absence of jurisprudence, that attorney's fees meet the definition of "property damage" as defined by the policy because they are neither a physical injury to tangible property nor a result of the loss of use of the Hollybrook plant. Accordingly, the court finds that coverage does not exist for attorney's fees.

## CONCLUSION

For the reasons stated herein, it is the finding of the court that coverage exists for the damages awarded to Hollybrook excluding the purchase price of the Carver equipment.

**THUS DONE AND SIGNED,** this 27 day of December, 2013.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE